948 So.2d 254 (2006)
Doris Jean Prisock DUPREE Plaintiff-Appellee
v.
John E. DUPREE, Jr. Defendant-Appellant.
No. 41,572-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2006.
*255 James Willis Berry, Counsel for Appellant.
Donald L. Kneipp, Counsel for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
DREW, J.
Both the ex-husband in his appeal and the ex-wife in her answer to her ex-husband's appeal asserted that the trial court erred in partitioning their former marital community property. John E. Dupree, Jr., complained that the trial court incorrectly ordered him to reimburse Doris Jean Prisock Dupree for half of her separate funds used for community expenses and in awarding his ex-wife 40 acres and a motorcycle.
According to Doris, the trial court erred in ruling she waived her claims for reimbursement of her separate funds used to extinguish community obligations after the termination of the community. In addition, Doris objected to the trial court's refusal to include certain of John's checking accounts and certificates of deposit as community property in calculating the partition. Finally, Doris asserted that the trial court incorrectly omitted the civil fruits of John's separate property as community property in allocating community assets.
In very detailed and carefully-considered reasons for judgment,[1] the trial court gave scholarly explanations for the judgment partitioning the community assets and ordering the equalizing payment from John to Doris. We amend the judgment of the trial court to increase by $9,145.52 the equalizing payment from John to Doris. In all other respects, the judgment of the trial court is affirmed.

BACKGROUND

06/02/1973 Marriage.
 Two children born of marriage.
03/26/2001 Doris filed declaration of separateness
 of property by which
 she reserved as separate the civil
 fruits derived from her separate
 property.
03/26/2001-05/21/2003 Parties acknowledged that Doris
 deposited separate funds of
 $284,008.32 into community
 checking account during that
 period.
03/2003 Parties separated.
05/21/2003 Doris filed for divorce.
02/07/2004 Divorce judgment terminating
 community as of May 21, 2003.

While married to John, Doris received an inheritance from her father and donations *256 from her mother of bank stock and other assets which produced large dividends. Doris deposited the dividends into a community checking account and spent the monies on the family. John acknowledged that, from the date that Doris filed the declaration making the dividends her separate property on March 26, 2001, until the termination of the community on May 21, 2003, those deposits totaled $284,008.32. Although both spouses were signatories on the checking account, it was used almost exclusively by Doris.
During this period, John worked as a registered nurse at LSU Hospital in Monroe at a salary of some $44,000.00 per year and also farmed on the 40-acre tract in dispute. John also received an inheritance from his parents during the marriage. According to Doris, John's support of the family consisted of a monthly payment to her of approximately $1,400.00. By stipulation, the parties agreed to the value and community nature of certain assets and debts.

DISCUSSION
The property of married persons domiciled in Louisiana is either community or separate.[2] La. C.C. art. 2335. La. C.C. art. 2338 defines community property:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.
What constitutes separate property is set out in La. C.C. art. 2341:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.
Property possessed by a spouse during the existence of the community property regime is presumed community, although either spouse may prove it to be separate property. La. C.C. art. 2340. The natural and civil fruits of separate property are community property; however, a spouse may reserve them as separate property by a declaration made in authentic form effective from the date the declaration is filed in the public records. La. C.C. art. 2339. An obligation incurred by a spouse for the common interest of the spouses or for the interest of the other spouse is a community obligation. La. C.C. art. 2360. Except *257 as provided in La. C.C. art. 2363,[3] obligations incurred during the community property regime are presumed to be community obligations. La. C.C. art. 2366.
Reimbursement from the Community to Doris for Separate Funds Used
In response to Doris's claim for reimbursement from the community for half the amount of her separate funds spent for community obligations and expenses, John argued that the money was spent for exorbitant luxuries which exceeded the ordinary needs and expenses of the family. As examples, John cited:
 Doris's monthly lease payment of $1,050.00 for a large luxury model Lexus; and
 more than $10,000.00 per month Doris spent for clothing, gifts, pool expenses, furniture, landscaping, and jewelry.
Conceding the separate nature of the aforementioned dividends, John agreed that the money was Doris's to spend as she chose. Since the expenses were well beyond the needs and means of the parties, John argued that the community should not be ordered to reimburse Doris for half of the expenditures which were not ordinary expenses of the marriage.
In Doris's view, the trial court correctly found the funds were spent for community expenses and benefitted the entire family by maintaining their 4,500-square-foot residence, pool, yard, and comfortable lifestyle, along with educating their children in private schools. John for many years enjoyed the lifestyle which Doris's separate funds provided. Doris testified that John did not pay for his daughter's education or expenses or for their home and its furnishings. This permitted John to hoard his assets. Among the benefits to John were a luxurious home on which he never paid a mortgage note; interests in two airplanes during the marriage; sheepskin seats in the airplane; new, nicely-equipped trucks; recreation land upon which to hunt; and recreational vehicles. Moreover, John obtained a college education and nursing degree without having any financial worries after he and his father sold their family business a number of years earlier.
The trial court correctly ruled that under La. C.C. art. 2361, Doris was entitled to the benefit of the legal presumption that the $284,008.32 was used to satisfy community obligations. To defeat Doris's claim for reimbursement, John had to prove under La. C.C. art. 2363 that the expenditures were not for the common interest of the spouses or for John's interest, but were incurred for Doris's separate property for which neither the community nor the family received any benefit. The trial court stated:
John produced no evidence that any of these expenditures were incurred for Doris' separate property. His basic argument focuses on the amount of money Doris spent on clothing, gifts, furnishings, jewelry, transportation and related items which he testified were primarily to satisfy the extravagant lifestyle of his ex-wife and daughters. *258 However, an obligation which improves the community property assets or fulfills his alimentary obligation to his daughters or was incurred for the common interest of the spouses is a community obligation. La. C.C. arts. 227, 229, 230, 2349, 2360, 2362, and 2367.
A review of the expenditures in question reveals that most of the expenditures were for clothing, household items and furnishings, transportation expenses, swimming pool necessities, house and yard maintenance, taxes, insurance premiums, medical needs, educational and extracurricular activities for his minor child and other customary expenses of the marriage for which he received a direct benefit.
Noting that the evidence showed the family enjoyed the benefits flowing from Doris's separate property for many years, the trial court correctly concluded that the expenses John characterized as extravagant were not beyond the normal and customary expenses of this marriage. The testimony and documentation placed into evidence showed that, without Doris's separate funds, the family would not have been able to have enjoyed the lifestyle to which they were accustomed. John's monthly contributions to the family were insufficient to finance, maintain and pay the monthly expenses for their large home, swimming pool and yard and to provide clothing, food, transportation, medical expenses and related costs for the family.
To John's contention that he did not agree or consent to the family's lifestyle, the trial court noted that Doris was not required to have John's consent to make the expenditures. La. C.C. art. 2346 provides for equal management of community property and directs that each spouse alone may manage, control and dispose of community property. The trial court found it would be "inequitable to deny Doris's reimbursement claim because some of the expenses about which John complains are beyond the reach of most people living in Richland Parish." The use of Doris's separate funds inured to the benefit of the community, the family and John who failed to overcome the Article 2361 presumption in Doris's favor. Therefore, the trial court found Doris entitled to reimbursement from the community assets the sum of $142,004.16, or half the amount of the funds stipulated to be her separate property.
In Doris's answer to John's appeal, Doris claimed the trial court erred in finding she waived her claims for reimbursement for payment of community debts with her separate funds after the termination of the community. Doris did not include this issue in post-trial brief, and the trial court assumed in footnote 2 of the unpublished addendum that Doris had abandoned her claims for reimbursement after the termination of the community. Placed into evidence at trial was an itemized list of those expenses totaling $18,291.05, primarily for insurance premiums on community property, taxes, and car payments. Doris testified at trial about many of these items and pointed out in her appellate brief that John did not provide evidence disputing that these were community debts. Doris's weak explanation of this omission from her post-trial brief was that she concentrated on more complex and contested issues. However, the record supports her contention that she is entitled to reimbursement for half of these expenditures. Therefore, the amount of equalizing payment ordered by the trial court from John to Doris is amended and increased by $9,145.52.
Motorcycle and 40-Acre Tract
John objects to the 2001 Harley-Davidson motorcycle having been included in the *259 community property partition and awarded to Doris. According to John, Doris gave him the motorcycle in full ownership as a Christmas gift, which she judicially admitted in a petition for revocation of a donation filed in the record. At trial, John stated that Doris paid for the motorcycle and that it was presented as a gift to him. When asked if the motorcycle was a gift for the couple, John said he could not answer that but his wife probably could. John acknowledged that Doris rode the motorcycle with him. Doris stated she wanted the motorcycle.
John initially testified he was willing for Doris to have the motorcycle and other assets and wanted no compensating payments for community assets. John explained in later testimony that he was confused by the questioning and wanted all community assets split equally with him receiving a compensating payment if the amount Doris received exceeded his share. John's complaints about the motorcycle being his separate property by virtue of a gift are belied by the joint stipulation filed by the parties that listed the motorcycle as community property.
In the stipulation filed into the record, the parties also agreed that the disputed 40-acre tract was community property. While John contended that the trial court erred in allocating this asset to Doris, John does not state how or why this was erroneous. John simply states that he wanted the acreage assigned to him. In Roan v. Roan, 38,383 (La.App.2d Cir.4/14/04), 870 So.2d 626, this court noted that the trial court has much discretion in valuing and allocating assets and liabilities in community property partitions and must consider the source and nature of each asset or liability, the financial situation of the other spouse, and any other relevant circumstances. La. R.S. 9:2801, et seq. An appellate court may not set aside a trial court's factual findings absent manifest error or unless clearly wrong. Roan, supra. We can discern no abuse of discretion or clear error in the trial court's allocation of the acreage and the associated debt along with the motorcycle to Doris.
Rulings on John's Bank/Investment Accounts and Certificates of Deposit
Finding that Doris had failed to follow the procedure required by La. R.S. 9:2801, et seq., to place at issue assets alleged to be part of the community, the trial court refused to include those items in the partition of the community. In response to Doris's interrogatories, John included the following assets which were not on his detailed descriptive list:

Commercial National Bank
 CD #8000951 $125,065.82 inherited
 CD #8000965 $ 20,000.00 inherited
 Checking #2007452 $ 89,493.03 inherited
Guaranty Bank & Trust
 Checking #1092103 $ 7,474.38
 CD $ 40,000.00 inherited
 CD $ 13,402.17

Doris's initial sworn detailed descriptive list of community property filed July 26, 2004, did not contain any reference to the foregoing assets. On October 6, 2004, John filed his sworn detailed descriptive list, which did not include those assets which John considered his separate property. Doris did not include any reference to the funds in her December 7, 2004, traversal of John's sworn detailed descriptive list. John filed his traversal of Doris's sworn detailed descriptive list and his amended detailed descriptive list of community property on April 1, 2005. The trial court observed that John's response to Doris's interrogatories contained information about the CDs and checking accounts and was mailed to Doris's attorney on May 10, 2005. Thereafter on July 1, *260 2005, prior to the trial held July 5 and August 12, 2005, Doris filed an amended sworn detailed descriptive list, which did not raise the ownership of the assets. Notwithstanding testimony about these assets at both days of the trial, Doris did not place these assets at issue and first raised her claim that they be included in the partition in her post-trial brief to the trial court.
The trial court explained:
This court finds that even though Doris had sufficient notice and opportunity to place these assets at issue during these proceedings, she failed to make this known to John or this court until after the trial had concluded. John testified about the certificates of deposit and the checking accounts during the trial; however, he did not have "fair notice" that Doris intended to place them at issue as items to be partitioned in the proceedings.
This court considered John's testimony during cross-examination about these assets in light of Doris' attempts to reveal John's alleged nefarious decision to keep his money to himself. Since these assets had not been included in the detailed descriptive lists, this court understood that Doris was eliciting this testimony to show why she was required to infuse her separate property funds into the community checking account so that this family could enjoy their high standard of living. This testimony was not considered by this court as an effort on Doris' part to expand her detailed descriptive list to include these assets as potential community property.
While John's testimony about these assets being separate property was inconclusive, the record supports the trial court's conclusion that Doris had notice well in advance of trial that he claimed them to be his separate property. Doris did not contest John's characterization of the assets as separate or make demand that those assets be included in the partition until after the conclusion of the trial.
La. C.C.P. art. 862 provides that a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief. As the trial court properly observed, art. 862 does not permit a trial court to decide issues which litigants have not raised. See Wilson v. Wilson, 30,445 (La.App.2d Cir.4/9/98), 714 So.2d 35.
The trial court also recognized that La. C.C.P. art. 1154 permits expansion of pleadings to include issues not raised in pleadings when the issue is tried by the express or implied consent of the parties. The very specific procedural requirements of La. R.S. 9:2801 govern judicial partitions of community property. Despite knowing that John considered the CDs and checking accounts his separate property, Doris failed to place them at issue and did not assert she wanted them included in the partition until after the conclusion of the trial. It is not necessary for this court to examine the legal status of those assets because they were not properly raised at trial. We find no error in the trial court's rejection of Doris's claims based upon her failure to place them at issue according to the mandates of La. R.S. 9:2801 when she had notice, time, and opportunity to do so.

CONCLUSION
The judgment of the trial court, which apportioned the assets and debts of community formerly existing between Doris and John and ordered an equalizing payment from John E. Dupree, Jr., to Doris Jean Prisock Dupree in the amount of $67,565.33, is amended to increase the *261 equalizing payment by $9,145.52 to a total of $76,710.85. In all other respects, the judgment of the trial court is affirmed. Costs of the appeal are to be paid equally by the parties.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The trial court's extensive Reasons for Judgment are attached as an unpublished addendum.
[2] See discussion entitled "Classification of Assets" in Katherine S. Spaht and W. Lee Hargrave, Matrimonial Regimes, § 3.1, 16 Louisiana Civil Law Treatise (2d ed.1997).
[3] A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. An obligation incurred after termination of a community property regime, except an obligation incurred for attorney's fees and costs under Article 2362.1, is a separate obligation.

An obligation resulting from an intentional wrong not perpetrated for the benefit of the community, or an obligation incurred for the separate property of a spouse to the extent that it does not benefit the community, the family, or the other spouse, is likewise a separate obligation.