STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-392


LYNN MARIE SOROLA CURTIS

VERSUS

LAWRENCE N. CURTIS


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 98-2033
HONORABLE DAVID BLANCHET, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

                                                            **AFFIRMED.**



**Paul M. Hebert, Jr.**
**Breazeale, Sachse & Wilson**
**P. O. Box 3197**
**Baton Rouge, LA 70821-3197**
**(225) 381-8008**
**Counsel for Plaintiff/Appellant:**
      **Lynn Marie Sorola Curtis**

**Diane Sorola**
**402 W. Convent St.**
**Lafayette, LA 70501**
**(337) 234-2355**
**Counsel for Plaintiff/Appellant**
**Lynn Marie Sorola Curtis**

**Philip C. Kobetz**
**P. O. Box 80275**
**Lafayette, LA 70598-0275**
**(337) 291-1990**
**Counsel for Defendant/Appellee:**
**Lawrence N. Curtis**

GREMILLION, Judge.

The plaintiff, Lynn Marie Sorola Curtis (Sorola), appeals the trial court's judgment in favor of the defendant, Laurence Curtis (Curtis), finding that he was involved in a joint venture and that Lawrence N. Curtis, Ltd. (Curtis Ltd.), owned interest in certain cases which were exchanged for stock in Curtis & Lambert, APLC (Curtis and Lambert).[1] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sorola and Curtis, an attorney, married in 1987 and divorced May 1, 1998. Sorola filed a petition for partition of community property in October 1998. In September 2000, she filed an amendment to the petition for partition of community property. In October 2000, the trial court rendered a judgment ordering mediation. In December 2002, Sorola filed a motion and traversal as to why certain investments accounts should not be classified as community assets and for valuation of said accounts for partition purposes. In March 2003, Sorola and Curtis were able to agree to a partial community property partition of all of the community movables. In June 2003, Curtis filed a memorandum regarding Sorola's motion to traverse admitting that certain investment accounts were community property, but denying that any community property existed in his law firm. He further filed a second supplemental and amended sworn detailed descriptive list. Sorola, thereafter, filed a traversal pertaining to the second detailed descriptive list. Following a two day trial in May 2004, the trial court found that all stock issued to Curtis in the Curtis and Lambert

---

[1] For simplicity we will refer to any law practice in which Curtis was involved subsequent to 1991 as "Curtis and Lambert." We note however that Curtis, Tilly & Robideaux was formed in February 1991; Curtis, Robideaux, & Lambert in October 1992; and Curtis and Lambert in December 1992.

1

Corporation, "formerly known as Curtis, Robideaux and Lambert, APLC and formerly known as Curtis Tilley & Robideaux APLC," was his separate property. Sorola now appeals.

## ISSUES

Sorola assigns as error:

1. The trial court's finding that there was a joint venture between Curtis, Ltd. and J. Minos Simon, Ltd. and/or J. Minos Simon, individually.

2. The trial court's finding that Curtis, Ltd. owned interest in certain cases (files) which were exchanged for stock in Lambert.

## LAW

The trial court's determination of what is community property as opposed to what is separate property is a finding of fact. *Young v. Young,* 06-77 (La.App. 3 Cir. 5/31/06), 931 So.2d 541. Factual findings of the trial court will not be disturbed in the absence of manifest error. *Stobart v. State through DOTD*, 617 So.2d 880 (La.1993). If a reasonable basis exists in the record for the trial court's finding, no error has occurred. *Id.*

Things in the possession of a spouse during the existence of a community regime are presumed to be community; however, that presumption can be rebutted by proof that the thing is separate property. La.Civ.Code art. 2340. In this case, the burden rests with Curtis to prove that the stock was his separate property. Pursuant to La.Civ.Code 2338, community property includes:

> [P]roperty acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to

2

the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.

Louisiana Civil Code article 2341, defines separate property in part as:

[P]roperty acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used[.]

Curtis acquired the stock in question in February 1991. Thus, as it was during the existence of the community of acquets and gains, it is presumed to be community property. Curtis bears the burden of proving that the stock was his separate property. The trial court found that he met that burden. In the trial court's extensive oral reasons for judgment it stated:

The Court is being asked to determine whether the stock issued to Lawrence N. Curtis individually by Curtis and Lambert, A Professional Law Corporation, belonged to Mr. Curtis' separate estate or to the community of acquets and gains formerly existing between him and Lynn Marie Sorola.

In 1982, Mr. Curtis and Mr. Simon entered into discussions concerning forming some kind of relationship to handle legal matters for mutual clients.

Mr. Curtis and Mr. Simon met personally on at least two occasions to discuss this relationship. Mr. Curtis had two goals in mind. He did not want to become an employee of Mr. Simon. And he wanted to practice in the same building complex where Mr. Simon practiced. Mr. Curtis consulted Mr. John Wright who suggested he form Lawrence N. Curtis, Ltd., A Professional Law Corporation.

The arrangement worked out between Mr. Simon and Mr. Curtis was that Mr. Curtis would arrange to have clients of [his former employer's corporation] discharge their corporation as their attorney, and the clients would sign new contracts with J. Minos Simon, Ltd. On those cases and every new case brought in by either attorney, there would be a fee split of two-thirds to Simon and one-third to Curtis. . . . All new

3

case contracts would also be between the clients and J. Minos Simon, Ltd., as well. As part of this arrangement, Simon would pay the expenses of the case, as well as the library, overhead, and office salaries.

. . . .

The arrangement was struck and Mr. Curtis moved his law office into the building complex where Mr. Simon practiced and which was owned by a company Simon owned. Lawrence N. Curtis, Ltd., a Professional Law Corporation, was formed a week or two after on June 14, 1982.

The Court notes that the arrangement reached between Mr. Simon and Mr. Curtis was completely verbal and no written documents exist as to this transaction. The Court finds this arrangement to be a joint venture where the participants each acquired an interest in cases and shared in profits and losses according to a fixed formula.

. . . .

The Court, therefore, finds that Lawrence N. Curtis, Ltd., A Professional Law Corporation, was engaged in a joint venture with J. Minos Simon, Ltd., and later with J. Minos Simon individually. Also Lawrence N. Curtis., Ltd., had an ownership interest in the cases represented by contracts signed between clients and J.Minos Simon, Ltd., and later between the clients and J. Minos Simon individually. This was true from the date of incorporation, as well as during the marriage between Mr. Curtis and Ms. Sorola.

When Curtis, Tilly & Robideaux, A Professional Law Corporation, was formed, the court finds that Lawrence N. Curtis, Ltd., transferred its interest in the existing cases to Mr. Curtis individually. Mr. Curtis then transferred these cases to the new corporation in exchange for his share of stock by having the clients who had contracts with Simon execute new [contracts] with Curtis, Tilly & Robideaux, A Professional Law Corporation.

. . . .

The question is whether the distribution of these cases from the corporation [Curtis, Ltd.] to Mr. Curtis is a civil fruit or a distribution of an equity interest which is subject to the theory of real subrogation.

. . . .

The court does not find that the distribution of the ownership in the cases from Lawrence N. Curtis, Ltd., to Lawrence Curtis, individually, was the

4

distribution of a civil fruit. Instead, it caused a diminution in the substance of the corporation [Curtis, Ltd.]. As such, the corporation's interests in the legal cases belonged to Mr. Curtis' separate estate.

## JOINT VENTURE

In *Coffee Bay Investors, L.L.C. v. W.O.G.C. Co.*, 03-406, pp. 7-8 (La.App. 1 Cir. 4/2/04), 878 So.2d 665, 670, *writ denied*, 04-1084 (La. 6/25/04), 816 So.2d 838 (footnote omitted), the law pertaining to joint venture was discussed:

A joint venture has been defined as "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Grand Isle Campsites, Inc. v. Cheek*, 262 La. 5, 19, 262 So.2d 350, 355 (1972), citing *Daily States Publishing Company v. Uhalt*, 169 La. 893, 901, 126 So. 228, 231 (1930). Generally, the object and the motive behind a joint venture are the anticipated profits derived from a specific business enterprise. See *Hayes v. Muller*, 245 La. 356, 367, 158 So.2d 191, 195 (1963); *Williamson v. Roberts*, 103 So.2d 499, 504 (La.App. 2nd Cir.1958). The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint venture is a question of law. *Grand Isle Campsites*, 262 La. at 24, 262 So.2d at 357.

The essential elements of a joint venture are generally the same as those of partnership, *i.e.*, two or more parties combining their property, labor, skill, etc., in the conduct of a venture for joint profit, with each having some right of control. *Cajun Electric Power Cooperative, Inc. v. McNamara*, 452 So.2d 212, 215 (La.App. 1st Cir.1984), *writ denied*, 458 So.2d 123 (La.1984). Accordingly, joint ventures are generally treated by our law as a species of partnership, and governed by the law of partnerships. *Id.* For example, there is a fiduciary duty between members of a joint venture similar to that which exists between partners in a partnership. *Sutton v. Fleming*, 602 So.2d 228, 230 (La.App. 3rd Cir.1992).

Louisiana Civil Code article 2801 defines a partnership as follows:

A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.

5

The requisite criteria for the existence of a joint venture (and a partnership) have been defined as follows:

(1) A contract between two or more persons;

(2) A juridical entity or person is established;

(3) Contribution by all parties of either efforts or resources;

(4) The contribution must be in determinate proportions;

(5) There must be joint effort;

(6) There must be a mutual risk vis-à-vis losses;

(7) There must be a sharing of profits.

*Cajun Electric*, 452 So.2d at 215.

These criteria require findings of fact. *Tabco Exploration, Inc. v. Tadlock Pipe & Equipment, Inc.*, 617 So.2d 606, 609 (La.App. 3rd Cir.), *writ denied*, 625 So.2d 1057 (La.1993).

Although we may have found differently had we been sitting as the trier of fact, having thoroughly reviewed the record, we cannot say it was manifest error for the trial court to find that a joint venture existed between J.Minos Simon/J. Minos Simon, Ltd. and Lawrence N. Curtis, Ltd. as a reasonable basis for that finding exists in the record. Although Simon was deceased at the time of trial, it is clear from the record that he and Curtis had an oral agreement to split fees wherein Curtis received 1/3 of the fees and Minos received 2/3 of the fees, in return for their efforts and resources. The formation of Curtis, Ltd. occurred at the same time that Curtis entered into the arrangement with Simon. Further, Simon issued checks to Lawrence N. Curtis personally and Curtis thereafter deposited all funds through his corporation, which issued him a paycheck.

6

Sorola asserts that there was insufficient evidence in Curtis, Ltd,'s books that Curtis shared in the losses. However, Curtis testified that he did share in any losses that may have occurred. Additionally, his and Simon's CPA, John Wright, indicated that Minos and Curtis, Ltd. split fees and expenses. Moreover, Curtis, Ltd.'s tax returns for the years 1984-1991 reveal deductions for expenses for court fees, witness fees, medical advances to clients, and deposition costs. Obviously, these types of fees and costs are what one would consider a loss if a case was not eventually successful and revenue producing. Based on the foregoing, we still cannot find that it was manifestly erroneous for the trial court to find that a joint venture existed. Accordingly, Simon and Curtis, Ltd. jointly had an interest in the case files in question. As Curtis, Ltd. was formed prior to the marriage, its interest in the case files remained his separate property.

**FRUIT VERSUS EQUITY INTEREST/PRODUCT**

Louisiana Civil Code Article 551 defines the kinds of fruits. Fruits derive from another thing without diminishing its substance. *Id.* Civil fruits are "revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions." *Id.*

Louisiana Civil Code Article 2339 addresses the fruits and revenues of a spouse's separate property: "The natural and civil fruits of the separate property of a spouse . . . are community property. Nevertheless, a spouse may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged."

On the other hand, La.Civ.Code art. 488 states that: "Products derived from a thing as a result of diminution of its substance belong to the owner of that thing." Thus, if the case files are viewed as a fruit of Curtis, Ltd., they are community property. Whereas, if they are viewed as a product, that is, Curtis, Ltd.'s value was diminished when the case files were "distributed" to Curtis, then they remain Curtis' separate property.

The facts are that no formal corporate "distribution" took place between Curtis, Ltd. and Curtis. At the time of his departure from the joint venture with Simon, Curtis left with his existing files, (in which his clients had executed a contract with Simon and implicitly Curtis, Ltd. due to the existence of the joint venture) and had his clients execute new contracts with Curtis and Lambert.

Sorola's main argument centers on the fact that Curtis's interest in the case files "resulted from his labor, skill, and industry during the marriage and, therefore, [Curtis]'s stock in "Curtis & Lambert" should be community property." This argument is flawed. The community did benefit from Curtis's labor and skill expended on the cases in that it was undisputed at trial that the files generated income into the community from the fees which flowed from those case files to the tune of $555,195.59 over a three year period during the marriage. This situation would be no different than a spouse having stock ownership in a law firm prior to a marriage and having his/her income flow to the community after the marriage. The community would not acquire the stock in the law firm anymore than it would acquire an interest in any other stock owned by a spouse prior to marriage.

We do not find any error in the classification of the distribution of the case files from Curtis, Ltd. to Curtis individually as a "product" rather than a "fruit." Clearly, a substantial asset of any law corporation is its case files. Thus, if the files leave the law firm, the law firm's value has been diminished. Accordingly, we find the trial court properly held that the distribution of the case files was a distribution of capital assets or a "product." The distribution of the case files remained Curtis' separate property.

## REAL SUBROGATION

Finally, the trial court found that via real subrogation, Curtis' stock in Lambert remained his separate property. We agree.

> The principle of real subrogation has long been applied to allow a spouse with separate assets to manage and replace those assets as a patrimonial mass independent of the community.
> . . . .
>
> Partnership interests owned by a person before marriage remain separate property. If that equity position is replaced with a similar equity interest in a succeeding partnership or corporation, real subrogation occurs and the new interest remains a separate asset.

Katherine S. Spaht & W. Lee Hargrave, LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES, § 3.47 (2d ed. 1997) (citations omitted).

The trial court found that Curtis' equity interest in Curtis, Ltd. was replaced with a similar equity interest in Curtis and Lambert when he exchanged the case files that were distributed to him from Curtis, Ltd. for stock in Curtis and Lambert. The original equity position (case files) was replaced with a similar equity portion in the new corporation; accordingly real subrogation occurred and the new interest (stock) remained Curtis' separate asset. Therefore, we find no manifest error

9

in that finding.  Accordingly, this assignment of error is without merit.

## CONCLUSION

The judgment of the trial court in favor of the defendant, Lawrence N. Curtis, is affirmed.  All costs of this appeal are assessed against the plaintiff, Lynn Marie Sorola Curtis.

**AFFIRMED.**