ROLAND L. BELSOME, Judge.
|, Appellant Wanda G. Timpton appeals the trial court’s judgment dividing and classifying separate and community property between her and Appellee, Robert J. Jemison, II. For the reasons that follow, we affirm.

*1023
FACTS AND PROCEDURAL HISTORY

Appellant and Appellee were married on April 8, 1995. Mr. Jemison filed for divorce on May 17, 1999; the divorce was granted on August 22, 2001.
Mr. Jemison filed his sworn descriptive list with the court on April 14, 2005. On January 10, 2006, the trial court granted Mr. Jemison’s motion to have his descriptive list deemed to be the list of the community. Ms. Timpton filed a Motion for New Trial, which the trial court granted. Ms. Timpton subsequently filed her sworn descriptive list on April 21, 2008. Neither party sought to amend their respective descriptive lists before trial, which took place on October 28 and 29, 2008.[1]
|2The trial court issued a judgment and detailed reasons on March 26, 2009, dividing and classifying the parties’ immovable property, assets, liabilities, and insurance proceeds.[2] A brief summary of the trial court’s division and classification of the parties’ property is as follows:

7506 Jonlee Drive

The trial court found that 7506 Jonlee Drive was purchased by Mr. Jemison in July of 1986, before the parties were married, and that it was his separate property pursuant to the plain language of La. Civ. Code art. 2841.[3]
1825 Second Street/2^2 Dryades Street[4]
The trial court found that although 1825 Second Street was purchased in 1998, while the parties were married, Ms. Timp-ton executed a declaration of paraphernality in the Act of Sale, acknowledging the *1024 property to be the separate property of Mr. Jemison. Pursuant to La. Civ.Code art. 2342,[5] because Ms. ^Timpton specifically acknowledged the paraphernality of this property in the Act of Sale, the trial court found that the property at 1825 Second Street/2442 Dryades Street was Mr. Jemison’s separate property.

7900 Earharb Boulevard

The property at 7900 Earhart Boulevard was purchased in 1995, after the parties were married. The trial court noted that Mr. Jemison’s testimony reflected that he had been negotiating to purchase the property from the seller for several months prior to the actual sale, and that offers were submitted prior to the parties’ marriage. Furthermore, the loans made on the property were through On Call Nursing, Mr. Jemison’s separate business. Accordingly, the trial court found that Mr. Jemison had overcome the presumption of community to demonstrate that it was his separate property, because of the ongoing negotiations to purchase and sell the property that began prior to the community, and because the transaction was completed only one month after the parties were married.

582í Hayne Boulevard

The property at 5824 Hayne Boulevard was purchased during the marriage, in 1998, by the Medical Center of Gentilly, and was listed by Mr. Jemison as community property. Ms. Timpton, a physician, established the Medical Center of Gentilly d/b/a as W. Timpton Medical Center, A Professional Medical 1 Corporation, in 1991, prior to the parties’ marriage. The trial court recognized that Mr. Jemison was neither a member of the board of directors nor a shareholder of the corporation and had no other interest in the corporation. Therefore, the trial court found that the property was part of the corporation, and not part of the community.
The property, however, sustained extensive damage from Hurricane Katrina, and insurance proceeds were disbursed in the form of three checks. The checks tendered were in the amounts of $14,643.88, $191,785.00, and $70,000.00, which Mr. Je-mison argued were community assets. The trial court noted that the Special Master appointed in this case had concluded that such proceeds were civil fruits pursuant to La. Civ.Code art. 2339[6] if the policy *1025 of insurance was in Ms. Timpton’s name individually. The trial court found, however, that the insurance proceeds were plainly issued as a result of the damage to the corporation’s assets and thus not civil fruits.[7] Furthermore, the trial court questioned Mr. Jemison’s insurable interest in 2005, as the community terminated in 1999, and the premiums Rwere paid solely by the corporation, citing La. R.S. 22:853.[8] The court concluded that the insurance proceeds belonged to the medical corporation and were not part of the community.[9] 199Ip Land Cruiser
The trial court assigned no value to this asset. By judgment dated December 1, 1999, Ms. Timpton was awarded the use of the Land Cruiser, and Mr. Jemison was awarded use of a 1997 Mark VII Lincoln.[10] Because no evidence as to the value of the asset at the time of trial, the court assigned no value to the Land Cruiser, citing La. R.S. 9:2801(A)(4)(a).[11]
*1026 | ñ6933 Lake Willow Drive
Mr. Jemison stipulated to the classification of the property located at 6983 Lake Willow Drive as community. The trial court recognized that because all of the movable household property located at Lake Willow was destroyed as a result of Hurricane Katrina, the parties received $97,500.00 in insurance proceeds. Mr. Je-mison sought half of those proceeds, but could not determine a value for the community household furnishings that were in possession of Ms. Timpton at the time Hurricane Katrina struck.
Ms. Timpton listed a Sears washing machine, assigning a value of $400.00, and three pieces of artwork, assigning a collective value of $2,900.00, as community property; further, Ms. Timpton asserted that Mr. Jemison had separate property in the Lake Willow home at the time of Hurricane Katrina consisting of a sofa, coffee table, end table, china cabinet, exercise machine, and boat trailer. Because the court was unable to resolve this conflict on the evidence presented, the court found that each party was entitled to one-half of the insurance proceeds for the value of the contents of the Lake Willow home.
*1025 tion of the subject of the insurance free from loss, destruction, or pecuniary damage.
*1026 The trial court found that, in addition to $97,500.00, additional checks were received in the amounts of $38,116.92 and $250,000.00, noting that some of the funds were in the registry of the court, in addition to proceeds from the Hayne Boulevard property.[12] Unable to determine the source of the funds in the registry of the court, the trial court was unable to divide those funds. The court ^acknowledged that some of the funds were applied towards the mortgage for the Lake Willow property, but that no evidence was presented regarding the amount of that payoff. Based on this information, the court found that any and all insurance proceeds received as a result of damage to Lake Willow should be divided equally between the parties, after deducting the liabilities. The court found that the liabilities consisted of: (1) the Lake Willow mortgage pay *1027 out (amount unknown), (2) $4067.90, (3) $6,500.00, (4) $6,500.00, and (5) $8,000.00.[13]
Regarding the value of the Lake Willow home itself, the trial court heard testimony from Mr. Jemison, who testified that a search of comparable homes were all listed below $250,000.00; however, the court found that those homes had less square footage than the Lake Willow home and there was no indication of the extent of hurricane damage to the other homes, and no information regarding the sale price. Ms. Timpton asserted that the property’s value was above $350,000.00. Neither party submitted an appraisal or other professional valuation of the property. The court set the value of the Lake Willow property at $250,000.00, and further determined that, because neither party presented testimony regarding the allocation of immovable property at Lake Willow, Ms. Timpton should issue an equalizing payment to Mr. Jemison within 60 days in the amount of $125,000.00. The court held that if Ms. Timpton failed to make such payment, Mr. Jemison would be entitled to the opportunity to own the property. If neither party did so, however, the trial court concluded that the property would be listed at private sale for $250,000.00. ^STANDARD OF REVIEW
A trial court’s determinations regarding whether property is community or separate and classifying liabilities and assets are reviewed under the manifest error standard of review. Ross v. Ross, 2002-2984, p. 18 (La.10/21/03), 857 So.2d 384, 395. With regard to admission of evidence at trial, a trial court is allowed great discretion, and determinations to admit or exclude evidence will not be reversed on appeal absent an abuse of that wide discretion. Miller v. Southern Baptist Hospital, 2000-1352, p. 5 (La.App. 4 Cir. 11/21/01), 806 So.2d 10, 15.
ASSIGNMENTS OF ERROR
Appellant, Ms. Timpton, assigns as error the trial court’s application of La. R.S. 9:2801 and La. Civ.Code arts. 2358,[14] 2365, 2341, and 2335.
Examining the Code Articles in the order in which they appear in Appellant’s brief, Appellant first quotes La. Civ.Code art. 2341,[15] averring that Appellant paid insurance premiums on the Lake Willow property -with her separate funds. That payment of the insurance premiums, Appellant argues, provided the very windfall that produced the insurance proceeds; therefore, as the named insured, Appellant had the right to use the insurance proceeds as she saw fit, rather than the funds being placed in the registry of the court as community property.
Appellant’s argument, in essence, is that she is entitled to reimbursement for the insurance proceeds. However, because *1028 Appellant made no reimbursement claim in her sworn descriptive list or at trial in her proffer, we do not find that the trial court erred in its application of La. Civ.Code art. 2341, nor do we find that the |9trial court erred in placing the insurance proceeds in the registry of the court as presumptively community property.
Next, Appellant argues that the trial court improperly excluded her from submitting testimony or evidence regarding her reimbursement claim. Appellant submits that, pursuant to the language of La. Civ.Code art. 2358.1 (providing that “[r]e-imbursement shall be made from the patrimony of the spouse who owes reimbursement”), Appellant’s reimbursement claim against Appellee is not related to the partition of community property. Also citing La. R.S. 9:2801(A)(4),[16] Appellant submits that, pursuant to this statute, the court must partition the community by valuing the assets and liabilities at the time of trial, including reimbursement claims; therefore, the court erred in disallowing testimony or evidence regarding Appellant’s reimbursement claims.
| ] ^Appellant’s sworn descriptive list, however, was comprised only of immovable property, movable property, and separate property; notably, the list failed to include any liabilities or reimbursement claims. Furthermore, Appellant did not seek to amend this list at any time between the date of filing on April 21, 2008, and trial on October 28, 2008.[17] Accordingly, as articu *1029 lated in the Reasons for Judgment, the trial court disallowed the introduction of alleged reimbursement claims because Appellant failed to properly place such claims at issue pursuant to La. R.S. 9:2801.[18] Citing Dupree v. Dupree, 41,572 (La.App. 2 Cir. 12/20/06), 948 So.2d 254, the trial court noted that Appellant in this case had ample “notice, time, and an opportunity to [properly place reimbursement claims at issue].”
In Dupree, Doris Dupree, Appellee, failed to place at issue or contest certain assets listed as separate property by her husband, Appellant,[19] despite having notice and opportunity:
While John’s testimony about these assets being separate property was in *1030 conclusive, the record supports the trial court’s conclusion that Doris had notice well in advance of trial that he claimed them to be his separate property. Doris did not contest John’s characterization of the assets as separate or make demand that those assets be included in the partition until after the conclusion of the trial.
Dupree, 41,572, p. 11, 948 So.2d at 260. Therefore, the court concluded that, pursuant to the mandates of La. R.S. 9:2801, the trial court did not err in rejecting Doris Dupree’s claims to include Appellant’s separate assets in the partition. Dupree, 41,-572, p. 11-12, 948 So.2d at 259. The court stated:
The very specific procedural requirements of La. R.S. 9:2801 govern judicial partitions of community property. Despite knowing that John considered the CDs and checking accounts his separate property, Doris failed to place them at issue and did not assert she wanted them included in the partition until after the conclusion of the trial. It is not necessary for this court to examine the legal status of those assets because they were not properly raised at trial. We find no error in the trial court’s rejection of Doris’s claims based upon her failure to place them at issue according to the mandates of La. R.S. 9:2801 when she had notice, time, and opportunity to do so.

Id.

Similarly, in Boykins v. Boykins, 2004-0999 (La.App. 4 Cir. 4/24/07), 958 So.2d 70, writ denied, 07-1302 (La.9/28/07), 964 So.2d 369, this Court held that a trial court’s refusal to admit a husband’s sworn descriptive list into evidence was not error. In Boykins, Mr. Boykins alleged that the trial court erred in not allowing him to submit his sworn descriptive list into evidence. Boykins, 2004-0999, p.3, 958 So.2d at 74. However, Mr. Boykins did not seek to introduce the list until the third day of trial:
The record shows that Ms. Boykins introduced her sworn descriptive list into evidence at the beginning of the three-day trial. Her attorney noted that the documents introduced at trial by Ms. Boykins were available to Mr. Boykins’ prior counsel for review before trial began. Mr. Boykins did not attempt to submit his sworn descriptive list into evidence until the third day of trial, and Ms. Boykins’ attorney had not seen the list prior to that time. For these reasons, the trial court refused to allow Mr. Boykins to introduce his sworn descriptive list into evidence.
Boykins, 2004-0999, p.3-4, 958 So.2d at 74. Recognizing that a trial court’s decision to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion, this Court found that the trial court did not abuse its discretion in excluding Mr. Boykins’ descriptive list. Id. (citing Miller v. Southern Baptist Hospital, 2000-1352 p. 5 (La.App. 4 Cir. 11/21/01), 806 So.2d 10,15).
Likewise, in Godwin v. Godwin, the appellate court considered whether it was an abuse of discretion for the trial court to refuse to admit testimony or evidence regarding the husband’s alleged reimbursement claims when he failed to list such claims on his sworn descriptive list.[20] *1031 Godwin v. Godwin, 533 So.2d 1009, 1011 (La.App. 1 Cir.1988), writ denied, 537 So.2d 1165 (La.1989). The First Circuit found that, pursuant to La. R.S. 9:2801, the trial court acted within its discretion in disallowing testimony regarding reimbursement claims when such claims were not contained within the descriptive list filed prior to trial. Id. The court acknowledged that La. R.S. 9:2801 allows a trial court to set deadlines for filing of descriptive lists, noting that “in the case sub judiee, [husband] was granted a considerable extension to file his descriptive list”; nevertheless, “the list was void of any claims for reimbursement.” Id. The court recognized that the Second Circuit had similarly upheld a trial court’s refusal to admit a husband’s sworn descriptive list that was untimely filed. Id. (citing Mathews v. Mathews, 457 So.2d 746 (La.App. 2d Cir.1984)).
Additionally, a review of the record evidences that on October 28, 2008, the first day of trial, the trial court read into the record a previous court order dated October 1, 2008, which read, in pertinent part: “[It is] FURTHER ORDERED, ADJUDGED AND DECREED that the parties SHALL file a memorandum of fact and law, briefing all matters which are set,” and “[t]he memorandum of fact and law shall be filed no later than October 21, 2008.” (Emphasis added.) The trial court’s October 1, 2008 order also provided that “IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any and all outstanding matters not set by written motion for October 28, 2008 and not briefed in memoranda shall be dismissed.”[21] (Emphasis added.) The trial court continued:
| |4I reviewed the record in this matter. And Mr. Jemison filed his motion to set on November 8th and filed his memorandum of fact and law — on October 8th, rather, and his memorandum of fact and law on October 21st, both of which were timely according to my October 1st judgment.
Wanda Timpton filed her motion to set on October 24th, 2008, and a memo of fact and law on October 27, 2008, which was yesterday at 2:34 p.m., both of which were not timely in accordance with my judgment.
In accordance with the court’s October 1, 2008 order, the trial court declined to consider at trial the matters contained in Appellant’s untimely motion and memorandum, which Appellant asserts included reimbursement and maintenance allegations.[22] This Court has recognized that “[a] trial court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal absent an abuse of that discretion.” New Orleans Firefighters Local 632 v. City of New Orleans, 2007-1475, p.11 (La.App. 4 Cir. 3/5/08), 980 So.2d 760, 767 (citing Boykins v. Boykins, 04-0999, p. 4, 958 So.2d at 74; Miller v. Southern Baptist Hospital, 00-1352, p. 5, 806 So.2d at 15). Based on the foregoing, we find no abuse of discre *1032 tion on the part of the trial court in disallowing evidence regarding claims for reimbursement, and conclude that the trial court did not err in its application of La. R.S. 9:2801 [23] or La Civ.Code arts. 2358 and 2358.1.
| ^Appellant next cites La. Civ.Code art. 2365.[24] We find that La. Civ.Code art. 2365 was not misapplied by the trial court in this case, as Appellant failed to timely present her reimbursement claims, either in the sworn descriptive list or at trial, for the reasons discussed previously herein.
Turning to La. Civ.Code art. 2335, Appellant’s final assignment of error, we find no error on the part of the trial court. Article 2335 simply provides that “[p]roperty of married persons is either community or separate, except as provided in Article 2341.1.”[25] It is well-settled that “a trial court’s findings regarding the nature of the property as community or separate is - a factual determination subject to manifest error review.” Ross v. Ross, 02-2984, p. 18 (La.10/21/03), 857 So.2d 384, 395. Pursuant to the manifest error standard of review, “where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Accordingly, “if the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). The trial court’s Reasons for Judgment describe the facts and cir- *1033 cumstanees regarding each asset, as well as the court’s reasoning in assessing the applicable law in making each determination. Upon a review of the record in its entirety, we find no manifest or clear error on the part of the trial court with regard to the classification and division of community and separate property of the parties.
REQUEST FOR SANCTIONS
Appellee’s request for sanctions pursuant to Appellant’s alleged violations of Uniform Rule 2-1.7 and La. Civ.Code art. 868 is hereby denied.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed.
AFFIRMED; MOTION FOR SANCTIONS DENIED.

. In its Reasons for Judgment, the trial court noted that the trial of the traverses and valuation of the assets occurred in one hearing pursuant to La. R.S. 9:2801(A)(2), which provides:
Within sixty days of the date of service of the last filed detailed descriptive list, each party shall either traverse or concur in the inclusion or exclusion of each asset and liability and the valuations contained in the detailed descriptive list of the other party. For good cause shown, the court may extend the time period for a party to traverse or concur in the detailed descriptive list of the other party. The trial of the traverses may be by summary procedure. At the trial of the traverses, the court shall determine the community assets and liabilities; the valuation of assets shall be determined at the trial on the merits. The court, in its discretion, may by ordinary procedure try and determine at one hearing all issues, including those raised in the traverses.
La. R.S. 9:2801(A)(2); see also Williams v. Williams, 2006-2491, p.8 (La.App. 1 Cir. 9/14/07), 970 So.2d 633, n. 4 (acknowledging that “the trial court, in its discretion, may by ordinary procedure, try and determine at one hearing all issues, including those raised in the traverses”).

. The trial court noted that Appellant listed four pieces of immovable property alleged by her to be community property: 6933 Lake Willow Drive, 7506 Jonlee Drive, 1825 Second Street, and 7900 Earhart Boulevard.

. La. Civ.Code art. 2341 provides as follows:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.

. The trial court acknowledged that the property located at 1825 Second Street also bears the municipal address of 2442 Dryades Street.

. La. Civ.Code art. 2342 provides as follows:
A. A declaration in an act of acquisition that things are acquired with separate funds as the separate property of a spouse may be controverted by the other spouse unless he concurred in the act. It may also be controverted by the forced heirs and the creditors of the spouses, despite the concurrence by the other spouse.
B. Nevertheless, when there has been such a declaration, an alienation, encumbrance, or lease of the thing by onerous title, during the community regime or thereafter, may not be set aside on the ground of the falsity of the declaration.
C. (1) The provision of this Article that prohibits setting aside an alienation, encumbrance, or lease on the ground of the falsity of the declaration of separate property is hereby made retroactive to any such alienation, encumbrance, or lease prior to July 21, 1982.
(2) A person who has a right to set aside such transactions on the ground of the falsity of the declaration, which right is not prescribed or otherwise extinguished or barred upon July 21, 1982, and who is adversely affected by the provisions of this Article, shall have six months from July 21, 1982 to initiate proceedings to set aside such transactions or otherwise be forever barred from exercising such right or cause of action. Nothing contained in this Article shall be construed to limit or prescribe any action or proceeding which may arise between spouses under the provisions of this Article.

. La. Civ.Code art. 2339 provides as follows:
The natural and civil fruits of the separate property of a spouse, minerals pro *1025 duced from or attributable to a separate asset, and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property as provided in this Article.
A spouse may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged. A copy of the declaration shall be provided to the other spouse prior to filing of the declaration.
As to the fruits and revenues of immov-ables, the declaration is effective when a copy is provided to the other spouse and the declaration is filed for registry in the conveyance records of the parish in which the immovable property is located. As to fruits of movables, the declaration is effective when a copy is provided to the other spouse and the declaration is filed for registry in the conveyance records of the parish in which the declarant is domiciled.

. The court found that pursuant to La. Civ. Code art. 551 and Curtis v. Curtis, 2007-0392, pp. 7-8 (La.App. 3 Cir. 11/7/07), 969 So.2d 1277, 1282, fruits are things that are produced by or derived from another thing where there is no diminution of its substance.

. La. R.S. 22:853 provides, in pertinent part:
A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured. B. “Insurable interest” as used in this Section means any lawful and substantial economic interest in the safety or preserva-

. The court also classified a Fidelity Homestead Personal Checking Account. Although the account was listed by Mr. Jemison as a community asset, the court assigned no value to the account. The court found that the bank records introduced by Mr. Jemison evidenced that on May 14, 1999, three days prior to the termination of the community, there was a zero balance on the account, and no evidence was presented as to whether the account remained open or as to its value at the time of trial. The trial court also noted that Ms. Timpton had not listed any bank accounts on her sworn descriptive list.
Additionally, the court also classified a UNIPAC Student Loan. Mr. Jemison listed a $17,000.00 student loan balance from 1997 as a community liability, maintaining that it was incurred during the marriage and for the purpose of improving his earning power for the community’s benefit pursuant to La. C.C. art. 2360 (providing that "[a]n obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation"). The court assigned the loan as a community liability solely to Mr. Jemison, and noted that Ms. Timpton's share of the proceeds would be reduced by $8,500.00, or one-half of the amount of the liability.

. Although the Lincoln was presumed to be a community asset, the trial court noted that neither party listed it as an asset.

. La. R.S. 9:2801(A)(4)(a) provides as follows:
*1026 A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:
[[Image here]]
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
The trial court also classified a 2000 Honda Valkrye Motorcycle. Mr. Jemison submitted that he purchased the motorcycle after termination of the community with separate funds, and with Ms. Timpton signing as the guarantor; therefore, he listed it as a community asset only out of an abundance of caution. Ms. Timpton asserted that she borrowed money from Mr. Jemison to purchase the motorcycle. The motorcycle sustained Hurricane Katrina damage and Mr. Jemison was issued $6,000.00 in insurance proceeds.
Pursuant to La. Civ.Code art. 2340, the trial court noted that there was no presumption of community for the motorcycle because it was not purchased during the marriage. The court acknowledged Ms. Timpton’s testimony that the motorcycle was “actually something that [Mr. Jemison] used and he paid for.” Accordingly, the court classified the motorcycle as Mr. Jemison's separate property, as well as the insurance proceeds.

. The trial court further noted that on February 1, 2007, $4,067.90 was withdrawn from the registry of court by consent of the parties for homeowners insurance, and on February 28, 2007, $6,500.00 was withdrawn for debris removal, and another $6,500.00 on March 14, 2007, for additional debris removal. On Au *1027 gust 28, 2008, $8,000.00 was withdrawn to pay the Special Master.

. The trial court noted that Ms. Timpton also received an "emergency advance” in the amount of $2,500.00, which she converted to her own use, and therefore owed Mr. Jemison reimbursement for one-half of that amount, or $1,250.00.

. Appellant assigns as error the trial court’s application of La. Civ.Code art. 2358; however, only argument in reference to La. Civ. Code art. 2358.1 is contained within Appellant’s brief. See discussion infra.

.On appeal, Appellant does not reference the trial court’s application of La. Civ.Code art. 2341 with respect to the Jonlee Drive property; however, we note that in its Reasons for Judgment, the trial court specifically relied upon La. Civ.Code art. 2341 to determine that the property located at 7506 Jonlee Drive was Mr. Jemison's separate property. The property was listed on Appellant's Sworn Descriptive List with immovable property alleged to be part of the community. Accordingly, we find no error in the trial court's determination that the Jonlee Drive property, which was purchased by Mr. Jemison in 1986, was not part of the community.

. La. R.S. 9:2801(A)(4) provides:
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
(e) In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.
(f) Only in the event that an asset cannot be allocated to a party, assigned by the drawing of lots, or sold at private sale, shall the court order a partition thereof by licitation. The court may fix the minimum bids and other terms and conditions upon which the property is offered at public sale. In the event of a partition by licitation, the court shall expressly state the reasons why the asset cannot be allocated, assigned by the drawing of lots, or sold at private sale.

. A review of the trial transcript evidences that although Appellant had not properly asserted a reimbursement claim, the trial court permitted Appellant to make a proffer of an itemization of funds Appellant alleged she contributed towards the Lake Willow Home.

. La. R.S. 9:2801(A)(1) and (2) provides as follows:
A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:
(1)(a) Within forty-five days of service of a motion by either party, each party shall file a sworn detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities. For good cause shown, the court may extend the time period for filing a detailed descriptive list. If a party fails to file a sworn detailed descriptive list timely, the other party may file a rule to show cause why its sworn detailed descriptive list should not be deemed to constitute a judicial determination of the community assets and liabilities. At the hearing of the rule to show cause, the court may either grant the request or, for good cause shown, extend the time period for filing a sworn detailed descriptive list. If the court grants the request, no traversal shall be allowed.
(b) Each party shall affirm under oath that the detailed descriptive list filed by that party contains all of the community assets and liabilities then known to that party. Amendments to the descriptive lists shall be permitted. No inventory shall be required.
(2) Within sixty days of the date of service of the last filed detailed descriptive list, each party shall either traverse or concur in the inclusion or exclusion of each asset and liability and the valuations contained in the detailed descriptive list of the other party. For good cause shown, the court may extend the time period for a party to traverse or concur in the detailed descriptive list of the other party. The trial of the traverses may be by summary procedure. At the trial of the traverses, the court shall determine the community assets and liabilities; the valuation of assets shall be determined at the trial on the merits. The court, in its discretion, may by ordinary procedure try and determine at one hearing all issues, including those raised in the traverses.

. The court further explained Doris’s failure to put her claims at issue:
Doris’s initial sworn detailed descriptive list of community property filed July 26, 2004, did not contain any reference to the foregoing assets. On October 6, 2004, John filed his sworn detailed descriptive list, which did not include those assets which John considered his separate property. Doris did not include any reference to the funds in her December 7, 2004, traversal of John’s sworn detailed descriptive list. John filed his traversal of Doris’s sworn detailed descriptive list and his amended detailed descriptive list of community property on April 1, 2005. The trial court observed that John’s response to Doris’s interrogatories contained information about the CDs and checking accounts and was mailed to Doris's attorney on May 10, 2005. Thereafter on July 1, 2005, prior to the trial held July 5 and August 12, 2005, Doris filed an amended sworn detailed descriptive list, which did not raise the ownership of the assets. Notwithstanding testimony about these assets at both days of the trial, Doris did not place these assets at issue and first raised her claim that they be included in the partition in her post-trial brief to the trial court. Dupree, 41,572, p. 9, 948 So.2d at 259.

. Defendant contends the trial court erred in not allowing him to present evidence of payments he made from his separate property toward community debts. As defendant admits, no mention of these payments was made on the descriptive list filed prior to trial. Defendant's attorney instead attempted to elicit testimony from defendant during the trial regarding the separate property used for the benefit of the community. Plaintiff’s counsel objected. Although the judge sustained the objection, defendant proffered testimonial evidence, but no documentary evidence was offered to support the testimony. *1031 Godwin v. Godwin, 533 So.2d 1009, 1011 (La.App. 1 Cir.1988).

. The trial court also stated:
Just for the record, I have reviewed the transcript. And what I indicated my judgment of October 1 represents is supported by the transcript, the last page of which I indicated that "those matters ... not set on that day, I'm gonna dismiss those matters, and we're gonna try whatever else.” I put that on the record when we were in court last time and, out of an abundance of caution, pulled the transcript to make sure that my recollection was correct before I ruled.

. Counsel for Appellant objected to the dismissal, but conceded knowledge of the October 1, 2008 order, stating: "But I understand there was an order in there.”

. Although Appellant does not argue on appeal that the trial court erred in its application of La. R.S. 9:2801 in assigning no value to the 1994 Land Cruiser, we find that the trial court did not err in assigning no value to the Land Cruiser pursuant to La. R.S. 9:2801(A)(4)(a).

. La. Civ.Code art. 2365 currently provides as follows:
If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. If the community obligation was incurred to acquire ownership or use of a community corporeal movable required by law to be registered, and separate property of a spouse has been used after termination to satisfy that obligation, the reimbursement claim shall be reduced in proportion to the value of the claimant’s use after termination of the community property regime. The value of that use and the amount of the claim for reimbursement accrued during the use are presumed to be equal.
The liability of a spouse who owes reimbursement is limited to the value of his share of all community property after deduction of all community obligations. Nevertheless, if the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, or education of children of either spouse in keeping with the economic condition of the spouses, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse's share of all community property.

.La. Civ.Code art. 2341.1 provides:
A. A spouse's undivided interest in property otherwise classified as separate property under Article 2341 remains his separate property regardless of the acquisition of other undivided interests in the property during the existence of the legal regime, the source of improvements thereto, or by whom the property was managed, used, or enjoyed.
B. In property in which an undivided interest is held as community property and an undivided interest is held as separate property, each spouse owns a present undivided one-half interest in that portion of the undivided interest which is community and a spouse owns a present undivided interest in that portion of the undivided interest which is separate.