804 So.2d 27 (2001)
ALLVEND, INC.
v.
The PAYPHONE COMMISSIONS COMPANY, INC.; Payphone Connection Plus, Inc.; Robert C. Wimsatt, Gregory P. Muro, the Joint Venture of the Payphone Commissions Company, Inc. and Payphone Connections Plus, Inc., and Gasper J. Schiro, as Register of Conveyances
No. 2000-CA-0661.
Court of Appeal of Louisiana, Fourth Circuit.
May 23, 2001.
Rehearing Denied June 29, 2001.
*28 Pierre V. Miller, II, Patrick, Miller, Burnside & Belleau, LLC, New Orleans, Counsel for Plaintiff/Appellee.
Kenneth E. Pickering, Pickering & Cotogno, New Orleans, Counsel for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, and Judge DENNIS R. BAGNERIS, Sr.
BYRNES, Chief Judge.
The defendants/appellants,[1] Payphone Commissions Company, Inc. ("PCC"), Payphone Connection Plus, Inc. ("PCP"), Robert C. Wimsatt ("Wimsatt"), Gregory P. Muro ("Muro"), the joint venture of the Payphone Commissions Company, Inc. and Payphone Connection Plus, Inc. ("PCC/PCP)", and Gasper J. Schiro ("Schiro"), as Register of Conveyances, appeal the following two judgments: (1) the November 4, 1999 judgment awarding the plaintiff, Allvend, Inc. ("Allvend") $10,659.30; and (2) the January 19, 2000 judgment awarding Allvend attorney's fees. We reverse.
This case involves the pay telephone service at Louisa Fina, a convenience store and gas station located at 4039 Louisa Street in New Orleans.
Allvend, installed, maintained and serviced public pay phones in southeast Louisiana, primarily in New Orleans. By written contract Allvend leased space to install and operate pay telephones in return for a percentage of the revenues generated. Allvend's contracts provided that the right to operate the telephones was exclusive to Allvend during the five-year term of the contracts, with the term of the contract commencing upon the date of the telephone installation. At the time of the claim at issue, Lane Holmes ("Holmes") was president of Allvend.
PCC, PPC and PCC/PCP also owned and operated public pay telephones with similar arrangements with business owners. Muro was the president of PCC and Wimsatt was the president of PCP.
Tam Tran ("Tran")[2] was employed as a repair technician by Allvend. When Tran and his girlfriend, Lan Nguyen, first acquired the Louisa Fina gas station in 1997, Wimsatt (president of PCP) solicited for installation of a pay telephone. A friend of Tran, Andrew Le Dung ("Le Dung")[3], and Tran's girl friend ultimately signed a contract with Allvend. The contract dated *29 April 7, 1997, was recorded in the Conveyance Office on June 13, 1997.
In April, 1997, PCP's president, Wimsatt, continued to call to solicit a contract for a pay telephone. Tran and Allvend's president, Holmes, arranged to set up surveillance equipment at the Louisa Fina. Tran's meeting with Wimsatt on April 24, 1997 was videotaped. Tran did not disclose to Wimsatt that Tran was an employee of Allvend. Tran told Wimsatt that Allvend threatened to sue Tran. The defendants assert that Wimsatt was trying to help Tran out by telling him they would predate the contract. Tran already had a contract with Allvend but led Wimsatt to believe that the contract was invalid because the signatory did not have the authority to sign for the Louisa Fina.
On May 9, 1997, Tran called and recorded his telephone conversation with Wimsatt. On the same date, May 19, 1997, PCC's president, Muro, called Holmes of Allvend, and Holmes recorded the conversation. On June 5, 1997, Tran recorded a portion of a conversation with PCC's president, Muro, by audio tape.
On June 20, 1997, Allvend filed a petition for damages, alleging that the defendants entered into a conspiracy to deprive Allvend of its contractual rights and future profits through fraud. Allvend sought property damages, lost past profits, lost future profits, and reasonable attorney fees pursuant to La. C.C. art.1958 and La. R.S. 51:1405. Allvend also sought the cancellation of the inscription of the PCC/PCP contract covering 4039 Louisa Street in the Conveyance Office.
Allvend installed a pedestal enclosure after July 6, 1997. Because Tran was waiting for his liquor license, Tran requested that Allvend not install any pay telephone at that time. Wimsatt acknowledged that he removed Allvend's phone enclosure and put the enclosure in a storage room inside Tran's establishment. Holmes testified that thereafter, he and an Allvend employee put plastic bags and masking tape on PCC/PCP's phone next to Allvend's phone.
Allvend claims that after Allvend filed its petition, the defendants approached Tran and offered to prepay two years' worth of commissions if Tran would execute an affidavit supporting the invalidity of Allvend's contract. Tran did not sign the affidavit.
After answering the petition, the defendants filed a third-party demand against Tam Tran, KLTN, Inc. ("KLTN"), and Lan T. Nguyen (Nguyen), asserting that the third-party defendants induced the defendants into the actions asserted in Allvend's petition. A reconventional demand by some of the defendants against Allvend and a third-party demand by Allvend against the defendants, were filed.
In their answer to the defendants' third-party demand, Tran, KLTN and Nguyen stated that KLTN operated the Louisa Fina, that Tran and Nguyen were officers of KLTN, that Tran did not disclose to PCC that Tran was also an employee of Allvend, and that Tran did not intend to bind KLTN when contracting with PCC/ PCP.
On October 23, 1998, the trial court denied the defendants' motion for summary judgment. On May 25, 1999, the trial court sustained the defendants' exception of no cause of action and dismissed Allvend's claim of unfair trade practices. On September 28, 1999, the defendants filed a peremptory exception of no right of action based upon the "clean hands" doctrine, which the trial court denied. Thereafter, the trial court denied the defendants' motion in limine to exclude from evidence any references to the audio-visual tapes and tape recordings.
*30 After a bench trial on October 28, 1999, the trial court rendered judgment in favor of Allvend and against the defendants (except for Gasper Schiro), jointly, severally, and in solido for $10,659.30 with interest from the date of judicial demand until paid, all costs and attorneys' fees to be determined at a later date. The defendants' appeal followed. After a hearing, the trial court rendered judgment in favor of Allvend and against the defendants (except for Gasper Schiro) in solido for $17,101.65 for attorney's fees on January 19, 2000. The defendants also appealed the second judgment awarding attorney's fees.
On appeal the defendants contend that the trial court erred in: (1) finding that Allvend stated a cause of action in fraud; (2) finding that Allvend proved the defendants' fraudulent intent; (3) finding that the defendants' fraud caused Allvend damages; (4) finding that Allvend proved intentional interference with a contract; (5) not applying the clean hands doctrine; (6) finding that Wimsatt's failure to testify led to an adverse inference; and (7) finding that all the defendants (except for Gasper Schiro) were solidarily liable and (8) failing to allocate fault. The defendants also contend that the trial court erred in awarding excessive damages and attorney's fees.
Because we find that the clean hands doctrine has merit, we will review that issue at this time. The defendants argue that Allvend had unclean hands because its employee, Tran, induced Wimsatt to back-date the defendants' contract, having led Wimsatt to believe that Allvend's contract was not valid because Tran's friend did not have the authority to sign the contract. Allvend asserts that the clean hands doctrine is an affirmative defense that must be raised by the defendants in their answer or that defense is waived under La. C.C.P. art. 1005.
An affirmative defense raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action. Gulf V, Inc. v. Hibernia Nat.Bank, 99-376 (La.App. 5 Cir. 11/10/99), 749 So.2d 722. An affirmative defense is one that will have an effect of defeating a suit on its merits. Walters v. Metropolitan Erection Co., 94-0162, 94-0475 (La.App. 4 Cir. 10/27/94), 644 So.2d 1143, writs denied 94-2858 & 94-2870 (La.2/9/95), 649 So.2d 420. The party pleading an affirmative defense has the burden of proving it by a preponderance of the evidence. Abadie v. Markey, 97-684 (La.App. 5 Cir. 3/11/98), 710 So.2d 327; Generally, an affirmative defense must be pleaded or it is waived. Sommer v. Dept. of Trans. and Development, 97-1929 (La. App. 4 Cir. 3/29/00), 758 So.2d 923, writ denied XXXX-XXXX (La.10/27/00), 772 So.2d 122. An affirmative defense cannot be raised for the first time on appeal. Margin v. Barthelemy, 93-2224 (La.App. 4 Cir. 5/17/94), 638 So.2d 291, writ denied 94-2172 (La.11/18/94), 646 So.2d 378. The general purpose of the statute requiring that certain defenses be affirmatively pleaded is to give fair notice of the nature of the defense and thereby prevent a last minute surprise to the plaintiff. Stockstill v. C.F. Industries, Inc., 94 2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, writ denied 96-0149 (La.3/15/96), 669 So.2d 428. The clean hands doctrine is recognized as a defense in Louisiana. A person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part. Guillie v. Comprehensive Addict. Programs, (La. App. 4 Cir. 4/21/99), 735 So.2d 779.
In Beauchamp v. Eckerd's Drugs of Louisiana, Inc., 533 So.2d 390 (La.App. 4 Cir.1988), 533 So.2d 390, writ denied 535 So.2d 743 (La.1989), the terminated employee *31 who brought a defamation action against his ex-employer, received the requisite notice of an affirmative defense of privilege, where the defendant employer raised that defense in the jury charges seven months prior to trial, although the defendant employer did not plead the defense in its answer.
In Sider v. Robin Temporary Service, 515 So.2d 1123 (La.App. 5 Cir.1987), writ denied 519 So.2d 146 (La.1988), the defendant raised the issue of the "borrowed servant" doctrine in its motion for summary judgment prior to trial. Further, without an objection, the introduction of testimony expanded the pleadings and put the issue of the borrowed servant doctrine before the court. See also Cypress Oil-field Contractors, Inc. v. McGoldrick Oil Co., Inc., 525 So.2d 1157 (La.App. 3 Cir. 1988), writ denied 530 So.2d 570 (La.1988).
In the present case, the defendants filed their answer on July 17, 1998. In their third-party demand dated August 11, 1998 against Tam Tran, KLTN, and Lan T. Nguyen, the defendants stated in part:
* * *
2.
KLTN, Inc. operates a convenience store/gas station at 4039 Louisa Street in New Orleans, Louisiana known as "Louisa Fina". Third party Defendant, Tam Tran, executed a Profit Sharing Agreement with the Payphone Commissions Company, Inc. dated March 15, 1997 indicating his corporate status as Vice-president of Louisa Fina Stop" whereas in truth and in fact he was a[n] officer of KLTN, Inc. but also acting secretly as an employee/agent or representative of original plaintiff in this matter Allvend, Inc.
* * *
4.
At no time did Tam Tran disclose to Payphone Commissions Company, Inc., that he was acting not only as a representative of KLTN, Inc., but also as an undisclosed employee, agent and representative of Allvend, Inc.
5.
Prior to the execution of the contract with Payphone Commission Company, Inc., an individual known as "Le Dung" (Andrew) executed a lease for the location of pay telephones with Allvend, Inc. at the place of business known at [sic] 4039 Louisa Street, New Orleans, Louisiana. Le Dung is not an officer, shareholder or director of KLTN, Inc. No written authorization for his acting on behalf of the corporation exists.
6.
Tam Tran represented to the Payphone Commissions Company, Inc., that Le Dung was just an employee of "Louisa Fina" (KLTN, Inc.) and as such was not authorized to enter into contracts on behalf of the business. Additionally, copies of the Allvend payphone location agreement were provided to Payphone Commissions Company, Inc., which indicated that Louisa Fina was a sole proprietorship wherein in truth and in fact the location was owned and operated by a corporation in which Le Dung had no interest whatsoever.
7.
Unknown and intentionally undisclosed to Third Party Plaintiffs, Tam Tran had ratified the actions of Le Dung on behalf of KLTN, Inc. The undisclosed ratification on the part of Tam Tran was maintained in secret on behalf *32 of his employer Allvend, Inc. who wished to initiate this litigation against Third Party Plaintiffs.
8.
Tam Tran executed the payphone profit sharing agreement with the Payphone Commissions, Inc., in bad faith since at the time he executed the contract he did not intend to bind KLTN, Inc. but merely to act as an agent provocateur in connection with proposed litigation contemplated by Allvend, Inc. Tam Tran made other material misrepresentations to the Payphone Telephone Commissions Company, Inc., its agents and representatives in order to secure the execution of the profit sharing agreement. [Emphasis added.]
9.
At all times material herein, Third Party Plaintiffs believed the agreement of Allvend, Inc. with Le Dung to be invalid and unenforceable since Tam Tran represented that Le Dung was not authorized to execute the agreement and did not disclose the ratification described above by himself on behalf of KLTN, Inc.
* * *
16.
Petitioners, Greg Muro and Robert C. Wimsatt urge that at the deposition of Tam Tran held on the 30th day of June, 1998 they learned of the dual role of Tam Tran and that he had acted in a representation capacity of Allvend, Inc. throughout his negotiation of contractual services with plaintiffs....
The plaintiff, Allvend, had notice of the defendants' affirmative defense of the clean hands doctrine from the defendants' pleading, the third-party petition.
Further, the defendants' peremptory exception of no right of action dated September 28, 1999, stated:
EXCEPTION
Defendants except to the Petition of Allvend, Inc., on the grounds that Allvend has no right of action against Payphone Inc., as explained in the attached Memorandum in Support of this Peremptory Exception of No Right of Action based on the "clean hands doctrine". [Emphasis added.]
In the supporting memorandum, setting forth the allegations and facts, the defendants cited various cases that recognized the clean hand doctrine as a defense. The defendants maintained that Allvend conspired to use false pretense to entrap the defendants. Tran did not inform the defendant that there already was a valid signed contract for pay phone service at the Louisa Fina. The defendants provided notice of the clean hands doctrine prior to the October 28, 1999 trial and the plaintiff had adequate time to prepare an opposition.
The trial transcript shows that the defense of unclean hands was also provided in the testimony without the plaintiffs objection. In the initial taped conversation between Tran and Wimsatt, when Wimsatt suggested that the contract could be predated, Wimsatt also noted that: "So long as they don't have the phones in, it's whoever gets the phones in first." Wimsatt further stated that: "You didn't sign it, so." This supports the defendants' contention that Wimsatt did not think that the Allvend agreement was valid because Tran did not sign it. Tran did not inform Wimsatt that Le Dung had the authority to sign the agreement on behalf of Tran when Wimsatt brought it up.
*33 During Tran's deposition dated June 30, 1998, Tran answered defendants' counsel's questions as follows:
* * *
Q. Is there anything formal in a written form at KLTN that allows Mr. Le Dung to act for the corporation?
A. The way we run business is family. I ask him to do what I ask him to do. So, he just watch out for me. It's not wrote out.
* * *
Q. At the bank, is he authorized to sign checks for KLTN?
A. No, not him.
Q. Who's authorized to sign for the company?
A. I and my partner.
Q. That's Mrs. Lan Nguyen, right?
A. Uh-huh (affirmative reply).
* * *
Q. Did you ever tell either Mr. Wimsatt or Mr. Muro, these two gentlemen sitting here, that Le Dung was authorized to sign for your company, KLTN, Incorporated?
A. I don't say anything about that.
Q. How about at any time?
A. No.
* * *
Q. Did you ever discuss with Mr. Wimsatt Le Dung and the fact that he signed this (contract with Allvend)?
A. Yes, I do.
Q. What did you tell him?
A. Mr. Wimsatt asked me, "Who is this?" And I say, "Just my employee," that's what I tell him.
Q. Just your employee?
A. Yes.
In the May 9, 1997 taped conversation between Wimsatt and Tran, Wimsatt stated: "Theybecause they don't have a legal contract with you since you didn't sign with them, and you are the one that owns the property." Tran answered: "Right."
During trial, Tran was cross-examined by the defendants' counsel in part as follows:
Q. Did you in fact, tell him that Mr. Dungdidn't you tell Mr. Wimsatt that Mr. Dung didn't have authority to sign any contract?
A. I don't say Mr. Dung don't have authority, but I say like he don't have any partnership in the business, so
Q. That was meant to tell Mr. Wimsatt that he didn't have any authority, correct?
A. That's correct.
Q. You didn't sign the contract with Allvend, did you?
A. No.
Q. How often do you go to Allvend's business?
A. I go there everyday.
Q. Every single day?
A. Yes.
Q. And yet you didn't sign a contract with Allvend?
A. No.
* * *
Q. Didn't you purposely lead Mr. Wimsatt to believe that Mr. Dung had no authority to sign the contract?
A. He asked me who Mr. Andrew is, and I explained to him that, and he told me, he explained to me did Mr. Le have no partnership or nothing, so he have no authority to sign contract with Allvend. But he don't know is I already tell Mr. Le to sign because at that time I was in Mississippi.
*34 Tran agreed that Tran told Wimsatt that Ken Wallace, one of Allvend's sales persons, was abusive to Tran in front of his customers.
Tran further answered the defendants' counsel's questions:
Q. Did you agree with Mr. Wimsatt that LeDung was not authorized to sign any contracts for Louisa Fina?
A. Yes, I talked to him about that.
Q. And he told you that?
A. Yes.
Q. You told Mr. Wimsatt in a telephone conversation that Allvend didn't have a legal contract because you are the one that owns the property, is that correct?
* * *
BY THE WITNESS:
I say I have to say that to make Mr. Wimsatt saytell me something about the way he does business.
Besides the additional pleadings, the testimony in the record expanded the defendants' initial pleading, and provided the affirmative defense of the clean hands doctrine.
In the present case, the defendants proved by a preponderance of the evidence that the plaintiff used inequitable and immoral conduct to support its case of fraud against the defendants. Tran did not tell Wimsatt that Tran was employed by Allvend. Tran told Wimsatt that Allvend's employee talked abusively to Tran in front of his customers and that Allvend threatened to sue him. The defendants showed that they were under the impression that the Allvend contract with Louisa Fina was not valid because Le Dong did not have the authority to sign the contract when Wimsatt suggested that the parties predate the defendants' contract with Tran. Tran's employee, Allvend, directed Tran's actions.
The defendants proved that Allvend had unclean hands by a preponderance of the evidence, and the clean hands doctrine defeats Allvend's claim of fraud against the defendants. Because the plaintiff and the defendants had unclean hands, their actions cannot be condoned.
Accordingly, the judgments of the trial court are reversed. The claims against the defendants are dismissed.
REVERSED.
NOTES
[1] When the appellants are collectively referred to as "the defendants," Gasper Schiro is not included.
[2] In the trial transcript, the last name is spelled "Tram"; however, the name is also spelled "Tran" in the record.
[3] In the trial transcript, the first name is spelled "Lee"; however, the name is also spelled "Le" in the record.