MOORE, J.
11 Christopher (“Chris”) Fulco appeals a judgment awarding reimbursement of $22,248.41 to his ex-wife, Debra Fulco, for her separate funds used to pay community obligations during the marriage. For the reasons.expressed, we affirm.

Factual Background

Chris and Debra got married in Benton, Louisiana, on July 1, 1994. They had no children together, and physically separated in September 2011. On September 9, 2011, Chris paid Debra $180,000 for her interest in the family home, on Toulouse Court in Bossier City. Chris filed for Art. 102 divorce on October 18, 2011; the subsequent judgment of divorce terminated the community retroactive to that date. The division of community property was *575 delayed while both parties secured new counsel.
Debra initially claimed a reimbursement of $27,330 for the separate portion - of her 401(k) retirement and pension funds used to pay community debts. The faets adduced at trial were as follows. Debra had worked at Credit Bureau of Shreveport since February 8,, 1988, contributing to a 401(k) retirement and a pension savings plan. She got married on July 1, 1994, and retired from. Credit Bureau on July 20, 2005; obviously the funds were part separate and part community, pursuant to the formula of Sims v. Sims, 358 So.2d 919 (La.1978). In April 2007, she cashed out both plans. Her 401(k) payout was $180,903.18; after ^deduction of taxes and fees, she received a check for $146,912.56, which she .deposited in the couple’s joint checking account at Barksdale Federal Credit Union (called account #0902 at trial) on April 21, 2007. Her pension distribution was $41,747.48; after deduction of taxes and fees, she received $33,397.98, which she deposited in account # 0902 on April 26, 2007. Before this activity, account # 0902 had a balance of $20,557.10, all of which was community money. With the infusion of over $214,000 in cash from Debra’s 401(k) and pension, on April 20, 2007, the couple paid off the mortgage on their house, $130,134.04. In early May 2007, they transferred $16,600 out of account # 0902 to-another account, using the latter to pay off Debra’s car note, $16,586.88. This left a balance of $55,144.66 in account # 0902. In mid-May 2007, the couple transferred $55,000 from account #0902 to a new account (called account # 0907 at trial). According to Debra, these transactions showed that within about one month’s time, all the money from her 401 (k) and pension, and the money already in account #0902, had been spent on community debts or moved to another account.
Prior to trial, the parties entered a stipulated judgment regarding the division of Chris’s retirement fund and employment-based stocks, and certain movables,- leaving only the reimbursement of - Debra’s 401(k) and pension at issue.

Triah Procedure

At trial in July 2014, Debra testified as outlined above. She argued’ that under the Sims formula, 39% of her 401(k) and pension were separate' property applied to pay off the house and SUV, community debts. She concluded she‘was entitled "to reimbursement of $24,783.79. In his -oral summation, counsel for Debra argued that Dupree v. Dupree, 41,572 (La.App. 2 Cir. 12/20/06), 948 So.2d 254, and Thomson v. Thomson, 2007-988 |s(La.App. 3 Cir. 2/27/08), 978 So.2d 509, writ denied, 2008-1129 (La.4/24/09), 7 So.3d 1191, were apposite and showed that commingling did not occur; however, these citations were- not included in his pretrial memo.
Chris testified that as he had already paid Debra $180,000 for her share of the house, he felt- he owed her no more for paying off the-mortgage. Counsel did pot dispute that 39% of her 401 (k) and pension were her separate property, but argued that once they were placed in the community account, # 0902, and then spent indiscriminately on community debts, it was impossible to trace what part of the money was separate. He particularly dwelt on how' Debra ' depleted 'account #0907, spénding much of'it on her daughter’s wedding.
The court ruled from the bench that there was not enough evidence to identify the separate funds, so Debra’s money was commingled with the community, money. The court denied her claim.
. Debra filed a- motion- for -new trial, urging that the finding of commingling was clearly contrary to the law and evidence. *576 She cited and discussed Dupree and Thomson, supra, showed the Sims formula, and requested reimbursement of $22,248.21. Chris opposed the motion, urging that there was no legal or factual error and that Debra did not meet her burden of proving what part of the commingled assets was hers, as required by Talbot v. Talbot, 2003-0814 (La.12/12/03), 864 So.2d 590.
In November 2014, the court held a hearing limited to argument. The court gently rebuked Debra’s counsel for not citing Dupree and Thomson in his pretrial memo, and found that these cases were precisely on point. The |4court also found that Talbot, relied on by Chris, was distinguishable. The court rendered judgment granting the new trial and awarding Debra the reimbursement of $22,248.21.
Chris has appealed, raising six specifications of error.

Discussion: Motion for New Trial

By his first five assignments of error, Chris contests the district court’s grant of a new trial and rendition of judgment without holding an actual new trial:
1. The court erred in granting a new trial for appellee.
2. The court erred in failing to actually hold a new trial, once it erroneously granted a new trial motion.
3. The court erred in allowing a rehashing of previous argument on ap-pellee’s reimbursement claims where no new evidence was presented and the court already made detailed findings of fact and law which were not unreasonable or clearly wrong.
4. The court erred in reversing detailed factual findings made at the close of trial based on nothing more than rehashed argument of counsel at the hearing on the motion for new trial.
5.The court erred in granting appel-lee’s reimbursement claim absent an actual new trial and absent permitting appellant to introduce evidence in an actual new trial to refute rehashed argument of appellee’s counsel.
Chris shows that a new trial shall be granted upon contradictory motion “when the judgment appears clearly contrary to the law and the evidence,” La. C.C.P. art. 1972(1). Citing federal jurisprudence, he argues that a motion for new trial is not a “re-do” when a party fails to perform at trial, LeClerc v. Webb, 419 F.3d 405 (5 Cir.2005). He contends the law is “crystal clear” that granting a new trial does not allow the judge to reverse his or her original ruling and substitute a new ruling absent the occurrence Lof an actual new trial, Lemalle v. Winn Dixie La., 452 So.2d 414 (La.App. 3 Cir.), writ denied, 456 So.2d 1002 (1984). When a new trial is granted, “it shall be assigned for hearing[,]” La. C.C.P. art. 1977. He concludes that the court’s ruling could result only in the rescheduling of the case for a new and actual trial, not simply a reargument, Rachal v. U.S. Fidelity & Guar. Co., 286 So.2d 147 (La.App. 3 Cir.1973).
Contrary to Chris’s position, the law authorizes precisely the procedure used here:
Art. 1978. Procedure in new trial
It shall not be necessary in a non-jury trial to resummon the witnesses or hear them anew at a new trial if their testimony has once been reduced to writing, but all such testimony and evidence received on the former trial shall be considered as already in evidence. Any party may call new witnesses or offer additional evidence, and with the permission of the court recall any witness for further examination or cross-examination as the case may be. However, the parties shall not be precluded from *577 producing new proofs, on the ground they have not been offered on the first trial. When a new trial is granted for reargument only, no evidence shall be adduced.
The court is authorized, on motion for new trial in a nonjury case, to use the testimony and documents already in evidence and reconsider the previous judgment. Heritage Worldwide Inc. v. Jimmy Swaggart Ministries, 95-0484 (La.App. 1 Cir. 11/16/95), 665 So.2d 528, writ denied, 96-0415 (La.3/29/96), 670 So.2d 1233; Russell v. McDonald’s Corp., 576 So.2d 1213 (La.App. 1 Cir.1991). The court has great discretion to admit new evidence or merely to reconsider the existing evidence in light of the arguments. LeBlanc v. City of Donaldsonville, 2003-2533 (La.10/29/04), 897 So.2d 104.
| (Although Debra’s motion for new trial did not specifically request reargument only, counsel advised the court at the hearing that Debra was not present and that Chris was present but would not testify. Counsel for Debra used visual aids to illustrate the evidence already admitted, tracing the money from her 401 (k) and pension into account # 0902 and then to pay off community obligations. The court clearly wished to use the new trial to reconsider the existing evidence in light of Dupree and Thomson. Under Art. 1978, it was within the court’s discretion to grant new trial for reargument only and not require additional evidence. These specifications of error lack merit.

Award of Reimbursement

By his final specification of error, Chris urges the court erred in “impliedly, finding clear, direct, positive evidence that appellee clearly traced separate funds in the property estate on the date of termination so as to meet her heavy burden of proof to overcome the presumption of community of commingled funds.” He concedes that a spouse who uses separate funds for the payment of community debts is entitled to reimbursement, La, C.C. art. 2365, but cites the presumption of community, La. C.C. art. 2340. The party alleging the separate character of the property must establish that the property was acquired and paid for with separate funds by proof that is “fixed, positive and legally certain.” Succession of Norwood v. Norwood, 519 So.2d 338 (La.App. 2 Cir.), writ denied, 521 So.2d 1169 (1988). Further, when a spouse places separate funds into a bank account that contains significant community funds, commingling 17occurs. Talbot v. Talbot, supra. Chris argues that during the marriage, he received a pension income, social security payments, interest from promissory notes and municipal bonds, totaling $345,604, and any amount Debra may have put in was “commingled indiscriminately” and “cannot be differentiated.” He submits that these facts are even stronger than in Talbot and support a finding that the whole account was community. He also contends that a spouse’s “contradicted testimony” is insufficient to overcome the presumption of community, Reeves v. Reeves, 607 So.2d 626 (La.App. 2 Cir.), writ denied, 608 So.2d 1010 (1992). Finally, he urges that the wife in Dupree, supra, proved the use of her separate funds to pay off specific community debts, distinguishing the case.
Property of married persons is either community or separate, subject to certain exceptions not applicable to this case. La. C.C. art. 2335. When a spouse receives a defined benefits, plan, such as pension or retirement, the classification of the plan is based on time of employment during the existence of the community and time when the spouse’s earnings were separate. Sims v. Sims, supra. Using the Sims formula, the parties stipulated that De *578 bra’s 401(k) and pension were 39%. her separate property.
When separate and community funds are deposited into one bank account, this fact does not convert the entire account into community property, “Only when separate funds are commingled with community fends indiscriminately so that the separate funds eannot be identified or differentiated from the community funds , are all of the funds characterized as community funds.” Curtis v. Curtis, 403 So.2d 56 (La.1981); Thomson v. Thomson, supra. The record establishes that when Debra .deposited her 401(k) and pension benefits into account #0902, these deposits were 39% her separate property.
If separate property of a spouse has been used either during the existence of the community or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value the property had at the time it was used. La. C.C. art. 2365; Bodenheimer v. Freitag, 94-2573 (La.1/6/95), 651 So.2d 251. The burden of proof is on the party claiming reimbursement to show that, separate fends existed and were used to satisfy the community obligation. Tippen v. Carroll, 47,415 (La. App. 2 Cir. 9/20/12), 105 So.3d 100; Dupree v. Dupree, supra.
The facts herein are analogous to those in Dupree, where the wife deposited $284,000 of her separate funds into a community checking account, and testified that over the course of the marriage she “spent the money on the family,” community obligations. In the partition, Ms. Dupree sought reimbursement of half the separate funds so used. This court affirmed the award of $142,000 in reimbursement. Thomson v. Thomson, supra, is also apposite. There, the husband deposited $2.6 million into two community checking accounts, which were used to pay both community and Mr. Thomson’s separate debts. Mr. Thomson showed, however, that $644,700 of the deposits were from his ■separate fends, ■ and that he had spent $67,600 for the benefit of his separate property. The balance, roughly $576,400, represented separate property used to pay .community debts. The district court awarded, and the Third Circuit affirmed, reimbursement of half that amount, or $283,700.
| flAs in Thomson, Debra showed that 39% of the 401(k) and pension she placed in account # 0902 was separate funds. As in Dupree, she also showed that from this infusion of .cash, within days the couple paid off the mortgages on the family home and on Debra’s SUV, community debts, and deposited the rest into a joint account that was used, within the next two years, on community expenses. In short, Debra proved that $44,496.42 of her separate money from the 401(k) and pension was applied to community obligations. Under Art. 2365, she is entitled to reimbursement of one-half this amount, or $22,248.21. The district court committed no legal or factual error in rendering judgment to this effect.
Finally, we have closely examined Curtis v, Curtis, supra, and Tolar v. Tolar, 28,202 (La.App. 2 Cir. 4/3/96), 671 So.2d 1234, cited by ■ Chris in brief, and find them inapposite. Those cases involved classifying bank accounts as community or separate; Curtis held that in the event of commingling, “where separate funds can be traced with sufficient certainty to establish the separate ownership of the property paid for with- those funds, the separate status of such property will , be upheld.” Unlike in Curtis■ and Tolar, Debra traced the separate 39% of her deposits to the community accounts and showed it was spent on community debts." This satisfied *579 her burden of proof under Art, 2365 and Dupree v. Dupree, supra.

Conclusion

For the reasons expressed, the judgment of reimbursement .of' $22,248.41 in favor of Debra Fulco is affirmed. Christopher Fulco is to pay all costs.
AFFIRMED.