Judge Rosemary Ledet
_]jThis is a suit for a breach of a construction contract and damages coupled with an insurance coverage dispute. The plaintiffs, Karla D. Davis and Dollie Davis (the “Plaintiffs”), filed suit against the general contractor, Eddie Beard, LLC (“Beard”); the subcontractor, Jose Garcia d/b/a NOLA Home Construction, L.L.C. (“NOLA Home”); and Beard’s insurer, Catlin Specialty Insurance Company (“Catlin”) (collectively the “Defendants”). From the trial court’s judgment in the Plaintiffs’ favor, Catlin appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
In August 2005, the Plaintiffs’ house located at 5155 Marigny Street in New Orleans, Louisiana (the “Property”), sustained severe damage as a result of Hurricane Katrina. Sometime thereafter, the house was demolished. The Plaintiffs secured a construction loan from JPMorgan Chase Bank, N.A, (“Chase Bank”) and began the rebuilding process. In the fall of 2008, the Plaintiffs contracted with Beard, NOLA Home, and NOLA Home’s managing agent, Mr. Garcia, for the | ^construction of new house at that location.[1] Construction on the Plaintiffs’ house began around December 2008 with Beard as the general contractor and NOLA Home as the subcontractor. Catlin issued a commercial general liability insurance policy to Beard with an effective date of January 1, 2009.
On February 16, 2010, Beard informed Mr. Garcia that NOLA Home was in default of their contract for failing to provide licenses and proof of insurance.[2] At the same time, Beard also notified Mr. Garcia of multiple deficiencies in the construction, as well as uncompleted work, and requested that NOLA Home take immediate remedial measures.[3] On February 22, 2010, Beard notified Mr. Garcia that NOLA Home was terminated from the construction project for failing to provide proof of insurance and failing to correct the deficiencies.
On April 22, 2010, the Plaintiffs filed a petition for breach of contract and damages against Mr. Garcia, NOLA Home, and NOLA Home’s insurance company due to faulty construction, failure to complete construction, and failure to repair the faulty workmanship. On April 28, 2010, the Plaintiffs filed a first supplemental and amending petition adding that the defective construction and failure to complete construction caused the house to sustain further damage, rendering it uninhabitable. On May 11, 2011, the Plaintiffs filed a second supplemental and amending petition adding Beard and its unnamed insurer as defendants. On October 10, 2011, the Plaintiffs filed a third supplemental and *838 amending petition naming Catlin as Beard’s insurer.
On January 10, 2012, Catlin filed a motion for summary judgment on the issue of coverage of the Plaintiffs’ claims. Following a hearing, the trial court granted the motion for summary judgment and dismissed Catlin with prejudice. On May 29, 2012, the Plaintiffs filed a motion for new trial, which the trial court granted. In its reasons for judgment, the trial court stated that it reversed “its earlier decision solely on the grounds that defendant [Cat-lin] failed to produce authentic evidence in the form of certified documents and/or affidavits in support of its Motion for Summary Judgment.”[4]
On September 28, 2015, a jury trial commenced on the issues of liability and coverage. Contemporaneously, a bench trial was held on the issue of Catlin’s coverage. At the close of the Plaintiffs’ case, Catlin filed a motion for directed verdict or involuntary dismissal.[5] Catlin argued that exclusions j(5) and j(6) (the | ¿“Exclusions”) barred coverage under its insurance policy.[6] The trial court took the matter under advisement and ordered additional briefing.
After all the evidence was submitted, the Plaintiffs moved for a directed verdict on multiple issues.[7] The trial court granted the Plaintiffs’ motion and found that the Property sustained damage before-July 28, 2009.[8] The trial court took the issue of *839 solidary liability under advisement and denied directed verdict as to the remaining issues.
On October 2, 2015, the jury returned a verdict in the Plaintiffs’ favor awarding $1,397,018.06 in damages against Beard, Mr. Garcia, and ÑOLA Home. |5On October 22, 2015, the trial court entered judgment reflecting the jury’s verdict and noted that the issue of coverage was taken under advisement. On December 10, 2015, the trial court granted Catlin’s involuntary dismissal regarding coverage. The Plaintiffs thereafter filed a motion for new trial on the involuntary dismissal of Catlin. On February 19, 2016, the matter was heard by the trial court. At the conclusion of the hearing, the trial court held as follows:
As to the motion for new trial, the Court is hereby granting the motion for new trail [sic], finding that specifically the affirmative defenses as relates to J-5 and J-6 were not raised as affirmative defenses; and therefore, Counsel didn’t appropriately avail herself of those exclusions. Then given the exclusions that were argued, the burden would have shifted to determine the damage; and there was no testimony specifically as to what damage was caused during the policy period and what damage was caused after the policy period.
So, given those things, the Court is granting a motion for new trial.
On March 7, 2016, the trial court issued it ruling granting the Plaintiffs’ motion for new trial and found coverage under Cat-lin’s policy issued to Beard. From that judgment, Catlin appealed. Finding the judgment lacked definitive decretal language, this court dismissed the appeal without prejudice and remanded the matter for further proceedings. Davis v. NOLA Home Const., LLC, 16-577 (La. App. 4 Cir. 7/29/16) (unpub.).
On September 1, 2016, the Plaintiffs filed a motion to amend the March 7, 2016 judgment. Following a hearing, the trial court, on September 28, 2016, rendered an amended judgment (the “Amended Judgment”) in the Plaintiffs’ favor and against Catlin as the insurer of Beard. This appeal followed.
LAs Catlin pointed out in its brief on appeal, the Amended Judgment failed to include proper decretal language and thus was not a final judgment. This court, therefore, ordered the parties to supplement the record with a copy of a final, appealable judgment. On May 10, 2017, the trial court issued an amended judgment entitled “Amended Final Judgment,” which the Plaintiffs submitted to this court. The Amended Final Judgment reads, in pertinent part, as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that, for the reasons stated on the record on February 19, 2016, the Motion for Directed Verdict and/or Involuntary Dismissal on behalf of Catlin Specialty Insurance Company be and hereby is denied. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there is coverage under the policy issued by Catlin Specialty Insurance Company to Eddie Beard, LLC, pursuant to the limits of that policy;
THEREFORE, JUDGMENT BE AND IS HEREBY RENDERED in favor.. of plaintiffs, Karla D. Davis and Dollie Davis against Eddie Beard, LLC, Jose Garcia d/b/a ÑOLA Home Constructors, LLC, and Catlin Specialty Insurance Company as the insurer of Ed *840 die Beard, LLC, in the full amount of ONE MILLION ($1,000,000.00) DOLLARS together with legal interest on thát amount from the date of judicial demand until paid, and for all costs of these proceedings, which costs will'be set on motion filed by Plaintiffs. JUDGMENT IS FURTHER RENDERED in favor of plaintiffs, Karla D. Davis and Dollie Davis against Eddie Beard, LLC, Jose Garcia d/b/a ÑOLA Home Constructors, LLC in the additional amount of THREE HUNDRED THOUSAND NINETY-SEVEN THOUSAND EIGHTEEN AND 06/100 ($397,018.06) DOLLARS, together with legal interest on that amount from the date of judicial demand.
STANDARD OF REVIEW
When the issues, presented on appeal involve fact questions or mixed questions of law and fact, the manifest error standard applies; when the issues involve questions of law, the de novo standard applies. Boes Iron Works, Inc. v. Gee Cee Grp., Inc., 16-0207, p. 8 (La. App. 4 Cir. 11/16/16), 206 So.3d 938, 946, writ denied, 17-0040 (La. 2/10/17), 216 So.3d 45, p. 45, 2017 WL 744658, p.*1.Summarizing the manifest error and de novo standards, this court noted in Spencer v. Chevron Corp., 16-0174, pp. 4-5 (La. App. 4 Cir. 9/28/16), 202 So.3d 1055, 1057-58, as follows:
Appellate courts review findings of fact using the manifest error or clearly wrong standard of review. Hall v. Folger Coffee Co., 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98. Thus, we will not set aside a trial “court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety.” Id. “In order to reverse a fact finder’s determination of fact, an appellate court must ... (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.” Coutee v. Glob, Marine Drilling Co., 05-0756, p. 5 (La. 2/22/06), 924 So.2d 112, 116. We “must not re-weigh the evidence or substitute [pur] own factual findings because’ [we] would have decided the case differently.” Id. ‘Where there are two permissible views of the evidence, the fact finder’s choice . between them cannot be manifestly erroneous or clearly wrong.” Id., 05-0756, pp. 5-6, 924 So.2d at 116. “This particular standard of review, is based, in part, on the trial court’s ability to better evaluate the testimony of live witnesses, compared with an appellate court’s sole reliance upon a written record.” A.S. v. D.S., 14-1098, p. 9 (La. App. 4 Cir. 4/8/15), 165 So.3d 247, 253. “The manifest error standard of review also applies to mixed questions of law and fact.” Id., 14-1098, p. 10, 165 So.3d at 254.
When reviewing legal issues, an appellate court gives “no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record.” Banks v. New Orleans Police Dep’t, 01-0859, p. 3 (La. App. 4 Cir. 9/25/02), 829 So.2d 511, 514. “A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial.” Id.
Furthermore, the applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion. Pitts v. Louisiana Med. Mut. Ins. Co., 16-1232, p. 10 (La. 3/15/17), 218 So.3d 58, p. 66, 2017 WL 1041228, p.*10 (citing Davis v. Witt, 02-3102, p. 19 (La. 7/2/03), 851 So.2d 1119, 1131; and Martin v. Heritage Manor S. Nursing Home, 00-1023, p. 6 (La. 4/3/01), 784 So.2d 627, 632).
*841 DISCUSSION
For ease of discussion, we divide our analysis of the issues presented by Catlin into the following three categories: (i) motion for new trial; (ii) coverage; and (iii) hearing on coverage.[9]

(i) Motion for neiv trial

As noted elsewhere, the trial court cited two reasons for granting the Plaintiffs’ motion for new trial: Catlin’s failure to raise the Exclusions as affirmative defenses, and the lack of evidence differentiating the damage caused during the policy period from the damage caused after the policy period.
On appeal, Catlin contends that the trial court erred in finding that it waived its right to rely on the Exclusions since the Exclusions were not asserted as affirmative defenses. Catlin contends that evidence related to the Exclusions was introduced at trial without objection and thus its answer was enlarged to include the Exclusions. Catlin further contends that since the Exclusions were asserted in |flits motion for summary judgment, which was filed in January 2012 and re-urged in April 2013, the Plaintiffs had notice and were not prejudiced at trial.
Louisiana Code of Civil Procedure Article 1005 provides that all affirmative defenses shall be specifically pled in the answér. “Generally, an affirmative defense must be pleaded or it is waived.” Allvend, Inc. v. Payphone Commissions Co., Inc., 00-0661, p. 6 (La. App. 4 Cir. 5/23/01), 804 So.2d 27, 30 (citation omitted). If the defendant fails to specifically plead the affirmative defense, then no proof can be offered in connection with the proposed affirmative defense at issue. Dixie Savings & Loan Ass’n v. Pitre, 99-154, p. 24 (La. App. 5 Cir. 7/27/99), 751 So.2d 911, 924. More specifically, “[regarding an insurance policy, this Court has held ‘where the pleadings fail to include this defense, defendant is precluded from offering proof in connection with this exclusion.’” Royal Cloud Nine, L.L.C. v. Lafayette Ins. Co., 08-0034, p. 6 (La. App. 4 Cir. 6/11/08), 987 So.2d 355, 359 (quoting Pendleton v. Smith, 95-1805, p. 5 (La. App. 4 Cir. 5/8/96), 674 So.2d 434, 437).
In the present case, it is undisputed that Catlin failed to plead the Exclusions as affirmative defenses in its answer; rather, Catlin pled exclusions k (“Damage To Your Product”), 1 (“Damage To Your Work”), and m (“Damage To Imparted Property or Property Not Physically Injured”), and “any exclusion contained in the policy applies to preclude ’coverage” as affirmative defenses. Catlin, however, avers that the Plaintiffs stipulated at trial to the following: (1) that the work was ongoing at the timé the Catlin policy was can-celled on July 28, 2009;' and (2) that Imthe only property damage claimed was to the house itself.[10] Catlin thus contends that *842 since the Plaintiffs stipulated at trial to evidence related to the Exclusions, its answer was enlarged under La. C.C.P. art. 1154 to include the Exclusions.
Addressing the enlargement of pleadings, the court in Barham & Arceneaux v. Kozak, 02-2325, pp. 16-17 (La. App. 1 Cir. 3/12/04), 874 So.2d 228, 241-42, observed as follows:
Louisiana Code of Civil Procedure article 1154 provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended. LSA-C.C.P. art. 1154. However, according to the editor’s notes to Article 1154, this sentence does not contemplate the adding of an issue not pleaded, but rather allows the pleading of material facts for an issue pleaded only generally or as a legal conclusion. A timely objection to an attempt to enlarge the pleadings, coupled with the failure to move for an amendment to the pleadings, is fatal to an issue not raised by the pleadings. Barker v. Loxco, Inc., 432 So.2d 975 (La.App. 1st Cir.1983); Gar Real Estate & Ins. Agency v. Mitchell, 380 So.2d 108, 109 (La.App. 1st Cir. 1979).
For introduction of evidence to automatically enlarge the pleadings under Article 1154, the evidence admitted must not be pertinent to any other issue raised by the pleadings. If the evidence was admissible for any other purpose, it cannot enlarge the pleadings without the express consent of the opposing party. Bourque v. Koury, 95-286 (La.App. 3rd Cir.11/2/95), 664 So.2d 553, 555; Snearl v. Mercer, 99-1738 (La.App. 1st Cir.2/16/01), 780 So.2d 563, 572, writs denied, 01-1319 & 01-1320 (La.6/22/01), 794 So.2d 801. When a particular claim has not been alleged, even if evidence supporting that claim is admitted without objection, if that evidence has relevance to another issue, it cannot be said to have enlarged the |npleadings to allow the court to rule on such a claim. See Harris v. Cola, 98-0175 (La.App. 1st Cir.5/14/99), 732 So.2d 822, 825; Boudreaux v. Terrebonne Parish Police Jury, 477 So.2d 1235 (La.App. 1st Cir. 1985), writ denied, 481 So.2d 133 (La. 1986).
Id. (emphasis in original).
As the Plaintiffs point out, the stipulations relied on by Catlin relate to issues pleaded in the Plaintiffs’ petitions. The Plaintiffs thus contend that the two stipulations cannot be used to expand Catlin’s affirmative defenses when the substance of the stipulations is contained in pleadings already in the record. We agree.
The jurisprudence holds that the pleadings may be enlarged when evidence on an issue not pleaded is introduced without objection. See Greengrove Missionary Baptist Church v. Cox, 42,418, p. 7 (La. App. 2 Cir. 9/19/07), 966 So.2d 707, 712 (citing Brown v. Sambo’s of Louisiana, Inc., 403 So.2d 813 (La. App. 2d Cir. 1981); see also Sledge v. Cont’l Cas. Co., 639 So.2d 805, 819 (La. App. 2d Cir. 1994) (finding that “evidence admitted without objection automatically enlarges the pleadings only when it is not pertinent to any other issue raised by the formal assertions of a party”). Here, the Plaintiffs claim in *843 their petition for damages that construction of their house was scheduled to be completed by April of 2010. The petition, which was filed on April 22, 2010, further alleges that the construction was still incomplete. Given that construction was incomplete in April 2010, construction on the Plaintiffs’ house was ongoing as of July 28, 2009. Furthermore, the damages sought in the Plaintiffs’ petition were for the costs and expenses of fixing the faulty work, payments made under the | ^construction contract, general damages, and attorney fees. Given the stipulations contained matters pled in the Plaintiffs’ petitions coupled with their lack of consent to the enlargement of the pleadings, Catlin failed to enlarge its answer to include the Exclusions.
Catlin further argues that the general purpose of requiring that defenses be affirmatively pleaded is to give notice of the nature of the defense and thus prevent a last minute surprise to the plaintiff. Bates v. City of New Orleans, 18-1153, 13-1587, p. 11 (La. App. 4 Cir. 3/26/14), 137 So.3d 774, 782; Allvend, 00-0661 at p. 6, 804 So.2d at 30. Since the Exclusions were raised in its motion for summary judgment, Catlin contends that the Plaintiffs had notice and were not prejudiced at trial.
In Dubois v. Fab-Con, Inc., 02-1731, pp. 5-6 (La. App. 4 Cir. 5/21/03), 848 So.2d 679, 683-84, this court observed that a statutory bar to the enforcement of an indemnity agreement was raised in opposition to motion for summary judgment rather than as an affirmative defense. This court reasoned that the better practice was to raise a statutory bar by pleading it as an affirmative defense in the answer; nonetheless, we concluded that the failure to do so did not preclude reliance upon the statute. Dubois, 02-1731 at p. 5, 848 So.2d at 683. In its reasoning, however, this court found that no objections were made in the summary judgment proceedings regarding the failure to raise the statutory bar and that the parties had “ample opportunity to argue, and [the parties had] argued, the applicability of the statute.” Dubois, 02-1731 at p. 6, 848 So.2d at 684.
| isThe present case, however, is distinguishable from Dubois, supra. A review of the record reveals that Catlin’s memorandum in support of its motion for summary judgment listed the following exclusions: j(5), j(6), k, 1, and m. Although Catlin listed the Exclusions in its memorandum, the gist of Catlin’s argument was that the Plaintiffs’ claims were barred by the “your work” exclusion. As noted elsewhere, exclusion k of Catlin’s policy bars coverage for “property damage” to “your work.”[11] Furthermore, the record is void of any indication that the Exclusions were argued and heard by the trial court in connection with the motion for summary judgment.
In sum, exclusions to insurance contracts must be specifically pled as affirmative defenses. Cole v. State Farm, Mut. Auto. Ins. Co., 14-329, p. 3 (La. App. 3 Cir. 10/1/14), 149 So.3d 831, 833 (citing Sher v. Lafayette Ins. Co., 07-2441, p. 22 (La. 4/8/08), 988 So.2d 186, 203); see Dixie Savings, 99-154 at pp. 23-24, 751 So.2d at 924 (finding that pleading an insurance policy “in extenso” fails to meet the requirement that affir *844 mative defenses be specifically pled). It is undisputed that Catlin failed to plead the Exclusions as affirmative defenses in its answer. Since the Exclusions were not specifically pled as affirmative, defenses, Catlin failed to appropriately, raise the Exclusions. Accordingly, the trial court was 114not manifestly erroneous in its ruling. We now examine whether the Plaintiffs provided sufficient proof to establish coverage under Catlin’s policy.

(Hi) Coverage

An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the policy governs the nature of their relationship. La. C.C. art. 1983. An insurance policy, which is a contract, must be interpreted according to the general rules of contract interpretation. Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827, pp. 5-6 (La. 5/22/07), 958 So.2d 634, 638 (citing Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La. 1994); and La. C.C. arts. 2045-57). Furthermore, if the policy language clearly expresses the parties’ intent and does not violate a statute or public policy, the policy must be enforced-as written. Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C., 07-0251, p. 6 (La. App. 4 Cir. 10/10/07), 969 So.2d 653, 658. If, however, there is any doubt or ambiguity as to the meaning of a provision in a policy, it must be construed in favor of the insured and against the insurer. Id.
Insurance policies should be construed to effect, rather than to deny coverage. Supreme Servs., 06-1827 at p. 6, 958 So.2d at 638 (citing Yount v. Maisano, 627 So.2d 148, 151 (La. 1993)). Insurers, however, may. limit their liability and impose reasonable conditions or limitations upon their insureds unless a statute or public policy dictates .otherwise. Supreme Servs., 06-1827 at p. 6, 958 So.2d at 638-39 (citing Reynolds, 634 So.2d at 1183; Livingston, Parish Sch. Bd. v. Fireman’s Fund American Ins. Co., 282 So.2d 478 (La. 1973); Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190 (La. 1974)). Furthermore, it is well-settled that “[although the insured bears the burden of proving a policy of insurance affords coverage for an incident, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy.” Jones v. Estate of Santiago, 03-1424, p. 12 (La. 4/14/04), 870 So.2d 1002, 1010 (citing Doerr v. Mobil Oil Corp., 00-0947, p. 5 (La. 12/19/00), 774 So.2d 119, 124, modified on other grounds on reh’g, 00-0947 (La. 3/16/01), 782 So.2d 573); see Duvio v. Specialty Pools Co., LLC, 15-0423, p. 23 (La. App. 4 Cir. 6/16/16), 216 So.3d 999, p. 1015, 2016 WL 3348855, p. *13 (citing Davis v. Allstate Prop. & Cas. Ins. Co., 13-0244, p. 4 (La. App. 4 Cir. 11/27/13), 129 So.3d 811, 814) (finding that the insurer bears the burden at trial of proving the exclusion applies).[12]
Catlin’s policy requires that the property damage occur during the policy period. More specifically, Section (I)(l)(c) of Catlin’s policy provides that it applies to “property damage” which occurs during the policy period and “any continuation ... of that... ‘property damage’ after the end of the policy period.” Furthermore, Section (V)(17)(a) defines “property damage” as “[p]hysical injury to tangible *845 property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.”
| u;On appeal, the following three facts are undisputed: (1) construction began on the Plaintiffs’ house in December 2008;[13] (2) Catlin’s policy went into effect on January 1, 2009; and (3) Beard cancelled its policy on July 28, 2009. Catlin’s policy was thus only in effect for a six month period. Furthermore, the trial court granted a directed verdict on the issue that the Plaintiffs’ house sustained damage before July 28, 2009, which neither Beard nor Catlin appealed.
At trial, Joseph Davis (Karla Davis’ brother and Dollie Davis’ son) testified that he viewed the Property during different stages of construction. Joseph Davis identified multiple photographs of the Plaintiffs’ house—including the foundation, ceiling joist, doors, carport, flooring, ceilings, balcony area, and air conditioning structure—-which were submitted into evidence. The photographs were taken during construction in 2009.
Mr. Garcia, NOLA Home’s managing agent, testified that construction of the foundation was completed by February 2009 and that the house was framed by June 2009.[14] Mr. Beard testified that he notified NOLA Home regarding multiple structural defects in the foundation of the house that existed since construction started—including an upstairs wall that was sagging and dips in floors.
Podromus Dagoglou, the Plaintiffs’ expert in construction and construction practices, testified that he observed various improper construction practices and the |17use of improper materials in the construction of the Plaintiffs’ house. For instance, Mr. Dagoglou testified that he noticed a crack in the ceiling. When he entered the attic above the crack, he observed the lack of a support column underneath the ceiling joist as called for in the construction plans. Mr. Dagoglou further testified that this support column should have been installed during the framing process. According to Mr. Dago-glou, the failure to install the support column causes the double ceiling joists to fail almost immediately, thereby causing the sheetrock to crack.
Mr. Dagoglou testified that he reviewed the construction plans for the Plaintiffs’ house and noted that they called for double floor joists under the walls. Although he was unable to determine whether double floor joists were present, he testified that the failure to use them would cause sagging of the floor joists underneath the supporting wall structure, which would occur within a very short period of time.[15]
Based on the evidence submitted, the record supports a finding that the Plaintiffs established that there was physical injury to the Property before July 28, 2009, the cancellation date of the policy. See Iberia Par. Sch. Bd. v. Sandifer & Son Const. Co., Inc., 98-319 (La. App. 3 Cir. 10/28/98), 721 So.2d 1021, 1023 (quoting *846 William S. McKenzie and H. Alston Johnson III, 15 La. Civ. Law Treatise, INSURANCE LAW AND PRACTICE § 183, p. 370 (1996)) (noting that “[i]f the roof leaks or the wall collapses, the resulting property damage triggers coverage under an ‘occurrence’ basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor.”). Given that Section (I)(1)(c) of Catlin’s policy affords coverage for property damage that continued even after the end of the policy period, coupled with the evidence that the Plaintiffs’ house sustained damages during the policy period, the trial court properly found Catlin’s policy provided coverage. The burden, therefore, shifted to Catlin to prove the applicability of a policy exclusion that would bar recovery. See Junes, supra; Duvio, supra. According to Catlin, coverage is barred under the Exclusions. As discussed above, Catlin failed to plead the Exclusions as affirmative defenses in its answer. Given the lack of evidence that coverage was barred by any other exclusion in the policy, Catlin failed to establish that the Plaintiffs were barred from recovering under its policy.
On appeal, Catlin also argues that some of the damage to the Property was “new” damage, which occurred after the policy period ended. According to Catlin, the new damage was not covered under the policy. Jurisprudence has held that when the proper apportionment of covered and excluded losses is at issue, the insurer has to prove how much of the damage was caused by an excluded peril. Dickerson v. Lexington Ins. Co., 556 F.3d 290, 295 (5th Cir. 2009); see also Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am., 638 F.Supp.2d 692, 695 (E.D. La.2009). Catlin’s policy, however, specifically covers property damage [19that continued even after the end of the policy period. As the trial court observed, Catlin failed to present evidence that would distinguish the damage caused during the policy period from any “new” damage caused after the policy period that would thus be excluded. Given Catlin’s failure to distinguish the covered damage that occurred during the policy period from non-covered damage that occurred after the policy was cancelled, the evidence supports the finding that the Plaintiffs were covered under the policy. Based on the evidence, the trial court was not manifestly erroneous in its ruling.

(Hi) Hearing on coverage

Catlin further contends that the trial court erred in granting the Plaintiffs’ motion for new trial and ruling in the Plaintiffs’ favor without conducting a hearing on coverage. See La. C.C.P. art. 1977 (“[w]hen a new trial is granted, it shall be assigned for hearing in accordance with the rules and practice of the court.”). Catlin maintains that the trial court was required to hold a hearing on the issue of coverage before entering judgment in the Plaintiffs’ favor. We find Catlin’s argument misplaced.
As the Plaintiffs point out, “[w]hen a new trial is granted for reargument only, no evidence shall be adduced.” La. C.C.P. art. 1978; see La. C.C.P. art. 1971 (“[a] new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only.”). Furthermore, in Fulco v. Fulco, 50,256, p. 5 (La. App. 2 Cir. 11/18/15), 183 So.3d 573, 577, the appellate court observed as follows:
lanThe court is authorized, on motion for new trial in a nonjury case, to use the testimony and documents already in evidence and reconsider the previous judgment. Heritage Worldwide Inc. v. Jimmy Swaggart Ministries, 95-0484 *847 (La. App. 1 Cir. 11/16/95), 665 So.2d 523, writ denied, 96-0415 (La. 3/29/96), 670 So.2d 1233; Russell v. McDonald’s Corp., 576 So.2d 1213 (La. App. 1[5] Cir.1991). The court has great discretion to admit new evidence or merely to reconsider the existing evidence in light of the arguments. LeBlanc v. City of Donaldsonville, 2003-2533 (La. 10/29/04), 897 So.2d 104.
In Fulco, the court noted that the motion for new trial did not specifically request reargument only. 50,256 at p. 6, 183 So.3d at 577. The court, however, observed that no evidence was introduced at the hearing; thus, “[tjhe court clearly wished to use the new trial to reconsider the existing evidence.” Id.
Here, on February 19, 2016, the trial court conducted a hearing on the Plaintiffs’ motion for new trial. At the hearing, neither the Plaintiffs nor Catlin sought to introduce any evidence. Given that the trial court was reconsidering the existing evidence, it was not required to hold another hearing.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. On August 15, 2008, the Plaintiffs contracted with NOLA Home for the construction of their new house. NOLA Home, however, was not a Chase Bank-approved contractor. On October 7, 2008, the Plaintiffs thus contracted with Beard, a contractor Chase Bank approved.

. On two prior occasions—on February 4 and 11, 2010—Beard had notified NOLA Home that it was in default for failing to provide licenses and proof of insurance.

. In its notice to NOLA Home, Beard attached a five-page "punchlist” outlining the non-completed and defective work.

. On April 12, 2013, Catlin re-urged its motion for summary judgment and attached thereto a certified copy of the policy with an affidavit by a senior claim representative. The trial court denied Catlin's motion. This court denied Catlin’s writ application seeking review of the trial court’s denial of its re-urged motion- for summary judgment. Davis v. NOLA Home Const., LLC, 15-537 (La. App. 4 Cir. 9/4/14) (unpub.). The Louisiana Supreme Court also denied Catlin's writ application. Davis v. Nola Home Const., LLC, 14-2081 (La. 11/26/14), 152 So.3d 907.

. Since whether Beard was covered under Catlin's policy was an issue for the trial court judge to decide, the proper procedural device was a motion for involuntary dismissal—not a directed verdict. See Crescent City Cabinets & Flooring, L.L.C. v. Grace Tama Dev. Co., L.L.C., 16-0359, p. 8 (La. App. 4 Cir. 10/19/16), 203 So.3d 408, 414 (citations omitted) ("[fjollowing a bench trial, a defendant may move for involuntary dismissal, pursuant to La. C.C.P. art. 1672(B).”).

. The Exclusions provide that coverage does not apply for “Property damage” to:
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the “property damage” arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work” was incorrectly performed on it.

. The Plaintiffs sought a directed verdict on the following five issues:
(1) Beard was the general contractor;
(2) ÑOLA Home was the subcontractor;
(3) ÑOLA Home performed the work on behalf of Beard;
(4) The Property sustained damage before July 28, 2009; and
(5) Beard and Mr. Garcia/NOLA Home are solidarity liable for all damages.

. In granting the Plaintiffs’ motion, the trial court stated as follows:
As to whether the building sustained damage prior to July 28th, 2009, the Court finds that we can direct verdict that the building did sustain damage. There were two contractors, one contractor, plaintiffs contractor, who testified that as soon as the load happened that there was damage; also, the engineer, structural engineer, called by Mr. Garcia’s attorney also suggested that the damage was immediate. Given those things, the Court finds—and those are items, according to the testimony, were performed prior to July 28th of 2009. So, the Court has to answer that question. There’s no alternate evidence as to that. The Court has to find that directed [verdict] is granted as to that issue.
*839 Now, as to the effect of that on the insurance and so forth, that’s still another issue for the Court to deal with.

. On appeal, Catlin raises the following assignments of error:
1. The trial court erred in reversing its prior grant of Catlin's Motion for Directed Verdict or for Involuntary Dismissal and finding in favor of the Davises without conducting a "new trial” on coverage, which it had previously ordered,
2. The trial court erred in denying Catlin’s Motion for Directed Verdict or for Involuntary Dismissal.
3.The trial court erred in entering judgment in favor of the Davises and finding coverage.

. At trial, the Plaintiffs entered the following stipulation, which - was accepted by Catlin:
Plaintiffs will stipulate that work was ongoing at 5155 Marigny Street as of July 28th, 2009. And Plaintiffs will further stipulate that the only property damage that’s being claimed in this case is damage to the home at 5155 Marigny Street itself, Exclud *842 ing other damages that are claimed, the only property damage is the damage to that structure itself.

. More specifically, exclusion k provided as follows:
1. Damage To Your Work
"Property damage” to "your work” arising out of it or any part of it and included in the “products-completed operations hazard.”
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

. See also Blackburn v. Nat. Union Fire Ins. Co. of Pittsburgh, 00-2668, p. 6 (La. 4/3/01), 784 So.2d 637, 641 ("[t]he insurer bears the burden of proving the applicability of an exclusionary clause within a policy”); Louisiana Maint. Servs., Inc. v. Certain Underwriters at Lloyd’s of London, 616 So.2d 1250, 1252 (La. 1993): (”[t]he .insurer has the burden of proving that a loss’ comes within a policy exclusion.”).

. Mr. Garcia testified at trial that he began working on the Plaintiffs’ house between the middle to end of December 2008.

. According to a May 16, 2009 change-work order from NOLA Home, the initial framing of the Plaintiffs’ house had been completed.

. Mr. Dagoglou also noticed that untreated wood was used in the rafters, caiport, air conditioning support structure, and under the porch, all of which was deteriorating; the wood should have been pressure-treated. He also observed the use of nails where joist hangers should have been used and the failure to use proper anchoring bolts. Mr. Dago-glou also testified that doors were not properly weatherized, which allowed water and moisture inside the house.